Watson v. Watson.

---

No. 22,021.

LOU WATSON, *Appellant*, v. A. H. WATSON et al., *Appellees*.

OPINION ON REHEARING.

SYLLABUS BY THE COURT.

HOMESTEADS—*Rights of Surviving Widow in Homestead—Antenuptial Contract*. The restrictions of the constitution and statutes touching the alienation of a homestead are for the protection of the family, and cannot be varied or avoided by an antenuptial contract providing that in case the wife survives the husband she is to have no part in his estate. Hence, so long as such surviving widow remains unmarried she may occupy the homestead regardless of such contract.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion on second rehearing filed May 8, 1920. Modified. (For original opinion of affirmance, and opinion on first rehearing, see 104 Kan. 578, 587, 180 Pac. 242.)

*John W. Adams, Austin M. Cowan, Claude I. Depuy, Forest D. Siefkin,* and *Chester I. Long,* all of Wichita, for the appellant.

*S. B. Amidon, Kos Harris, D. M. Dale, S. A. Buckland, H. W. Hart, Glenn Porter,* and *Enos E. Hook,* all of Wichita, for the appellees.

The opinion of the court was delivered by

WEST, J.: Counsel for the defendants naturally complain of our entertaining a second motion for rehearing and the necessity of reading volumes of literature added to the printed matter already presented in this case, but, although out of the ordinary, we have felt that we ought to examine with thoroughness and reconsider the points relied on by the plaintiff and covered by the order granting the rehearing.

Having again gone over the matters argued and reargued, presented and re-presented, we find no occasion to change anything in the former opinion and judgment, save in one respect. It is pressed upon our attention with unflagging reiteration that the plaintiff is entitled to possession of the homestead for the reason that the provisions of the antenuptial contract did not amount to an alienation thereof. Attention is once more called to *Hafer v. Hafer,* 33 Kan. 449, 6 Pac. 537, and the significant language there used.

The constitution and statutes touching the alienation of the homestead are too familiar to need restatement. Certain strict rules have been followed in decisions covering the state's history, only a few of which need be recalled. When the relation of husband and wife exists, the separate deed of the former conveys no title, although the wife has not been a resident of the state and has been abandoned without cause, the existence of the relation of husband and wife being the basis of this rule. (*Chambers v. Cox,* 23 Kan. 393.) A deed to the homestead executed by the husband alone did not ripen into a conveyance, the wife eight years later executing an independent quitclaim deed, the property no longer being occupied as a homestead, such second instrument not supplying the necessary joint consent. (*Ott v. Sprague,* 27 Kan. 620.) A husband made a contract to convey a homestead occupied by himself and family, receiving a promissory note for $200 and a cash payment of $40, the wife's consent to the contract never being obtained, and no deed ever being made. Suit was brought to recover upon the promissory note, and the defendant asked to recover back the $40

paid.  The contract to convey was held void, the note held to have been given without consideration, and the $40 to have been a voluntary payment.  (*Thimes v. Stumpff*, 33 Kan. 53, 5 Pac. 431.)  A husband executed a mortgage on the homestead and signed, or procured someone to sign, his wife's name and a notary to certify to its acknowledgment, and after six weeks the wife executed an instrument to ratify the mortgage, but it was held to be without effect, no joint consent being shown.  It was also held that the object of the homestead law is to protect the family, and to divest the homestead estate there must be a literal compliance therewith.  (*Howell, Jewett & Co. v. Mc-Crie*, 36 Kan. 636, 14 Pac. 257.)  A husband whose homestead was encumbered by a mortgage lien agreed with the mortgagee to execute another mortgage to discharge the first, so that the new one might become a first lien, the money derived from the second to be paid to the holder of the first, which was done and the money received and paid to the creditor, whose mortgage was released.  The wife had no knowledge of the agreement until after the new mortgage was executed and the former one released.  She refused to execute a mortgage for the remainder due.  The creditor brought an action to cancel the discharge and to foreclose the original mortgage.  It was held that the court could not declare the latter a lien on the homestead, as such a lien could only be created by the written consent of the wife in the manner prescribed by law.  In the opinion it was said:

"No matter how strong the appeal to the conscience of the chancellor, the organic law controls him.  If the plaintiff in error had advanced Simmons the sum of four thousand dollars, under the promise of Simmons that a mortgage would be executed on the homestead to secure it, and his wife knew the facts, and, with the money in the possession of the husband, refused to join in the mortgage, no court in this state has power to declare that sum a lien on the homestead.  The constitution forbids it.  The wife's consent to the creation of the lien is an absolute prerequisite to its validity.  The strong arm of the law, and the relieving hand of equity, are both powerless to take from the wife the hearthstone and the shade-trees of the homestead, except by her free and voluntary consent as prescribed in the fundamental law of the state of Kansas."  (*Jenkins v. Simmons*, 37 Kan. 496, 505, 15 Pac. 522.)

A husband sent his wife, who was away on a visit, a power of attorney which she executed giving him power to make contracts, sign deeds and mortgages and do all things requi-

site to such affairs as fully as she could do if present. The instrument was duly recorded in the county where the land was located, and some two and a half years after its execution, while it was still in force, the husband obtained a loan and executed a mortgage to secure its payment, which he signed for himself and his wife as attorney in fact. Upon foreclosure the wife claimed that she was not bound by the mortgage executed by her husband, because she had not given her joint consent. The case came before the writer as trial judge, who thought and held that the unrevoked power of attorney was a continuing consent, and so thought the present chief justice who wrote the opinion reversing this rule, and also the dissenting opinion. (*Wallace v. Insurance Co.,* 54 Kan. 442, 38 Pac. 489.) Chief Justice Horton and Mr. Justice Allen wrote separate opinions. The former in his separate opinion said:

"If the wife may delegate to her husband the power to act for her in the conveyance or alienation of the homestead, the power of attorney must expressly or by necessary implication confer the power to consent with him, or to act with his consent, in such conveyance or alienation. . . . Under all the circumstances I do not think that the power of attorney executed by the wife alone, in and of itself, was sufficient to give authority to the husband, or anyone else, to convey the homestead of the family." (pp. 451, 452.)

The latter, among other things, said:

"The power of attorney contains no reference whatever to the homestead. It is as general as such an instrument could be made. . . . It is not necessary, either, that we should decide in this case that the husband could not be authorized by the wife in any manner to attach her signature to a deed. But it is necessary in all cases that the husband and wife assent jointly; that both shall assent to it; that each shall assent with the knowledge and concurrence of the other." (pp. 453, 454.)

A homestead owner, without his wife's knowledge, verbally agreed with the adjoining landowner that a fence standing on the land should be the dividing line. For some years this agreement was acquiesced in by both owners. Afterwards, the owner, his wife joining, conveyed the entire tract to the plaintiff, who sued to recover the strip of land between the true boundary and the fence. It was held that the agreement, having been made without the consent of the wife, was of no force or effect. (*Kastner v. Baker,* 92 Kan. 26, 139 Pac. 1189.)

Watson v. Watson.

In the Hafer case (33 Kan. 449), it was agreed in the antenuptial contract that if the wife should survive she was to have a child's part of the husband's estate. When the husband died the homestead was occupied by his wife and a minor child, and while the contract was held valid, it was decided that the homestead was not subject to partition until the widow remarried or the child reached majority. In the opinion it was said:

"The antenuptial contract in question does not in terms refer to the homestead privilege, nor do we think any of the provisions of the contract embrace what was intended by the parties as a release or waiver of such privilege. But independent of the contract, we remark that the homested is not made alone for the husband and wife, or of either one, but is also designed as a protection for the family who may be dependent upon them for maintenance. Considerations of public policy also entered into the enactment, by making such provision as will prevent their helpless children and dependents from becoming a public charity. To this end, and with a view of carrying out these purposes, guards have been thrown around the homestead. Strict constitutional and statutory restrictions have been placed upon its alienation. When it is occupied by the family it can only be alienated by the joint consent of the husband and wife, when that relation exists; and at the death of the owner, if the homestead is still occupied by the widow and children, the law prohibits its distribution under any of the laws of the. state and from the payment of the debts of the intestate, and provides that partition shall not be made until such time as the widow shall again marry, or when all of the children arrive at the age of majority. In view of these considerations, and of the policy of the law which has been so frequently stated by this court, we think the right of occupancy of the homestead by the family of the intestate is not affected or disturbed by the antenuptial contract." (p. 464.)

*McMahill et al. v. McMahill,* 105 Ill. 596, was referred to and followed. In that case the widow admitted making an antenuptial contract, but insisted that it was not obligatory. Section 1 of the Illinois homestead act then in force secured to every householder having a family a homestead which could be alienated only by release, waiver or conveyance in writing subscribed by the householder, or by conveyance of the premises or abandonment or giving up of possession. The court said:

"After her marriage defendant enjoyed the homestead of her husband, and after his death the law continued it in her favor so long as she should choose to occupy it. It is obvious she could not contract, after marriage, by any written instrument not executed in conformity with the statute, to release her homestead, that would be binding upon her after the death

of her husband. How, then, could she do it before marriage? If a contract to release homestead, not conforming to the statute, made after marriage, is not valid, certainly such a contract made before marriage, for still more cogent reasons, would be without binding obligation." (p. 600.)

Two former decisions of the court were cited holding to a similar effect. While three of the justices dissented, the majority opinion seems still to be the law and a rule of property in that state.

In *Swingle v. Swingle,* 36 N. D. 611, it was held that an antenuptial agreement was void as to the homestead as contrary to public policy and welfare, and that—

"Such homestead exemption cannot be waived before the arrival of the appropriate time of claiming it." (Syl. ¶ 1.)

The court said the first proposition was that the plaintiff, by her written agreement, by her selection of a homestead prior to the marriage, and by her acts subsequent thereto, was estopped to set up any homestead rights.

"This conclusion is plainly error under the well-settled laws concerning such questions. The agreement in question was entered into prior to the marriage . . . it nowhere undertakes to deal with a homestead right as fixed by the law of this state, and, if it did, being an agreement before marriage in regard to the homestead, it would have been absolutely null and void. . . . But as to homesteads under the laws of our state no prior antenuptial agreement would be binding or of any effect concerning any relinquishment or waiver of the right of the homestead if it was made prior to the time of such marriage." (p. 619.)

The supreme court of Illinois, in *Zachmann v. Zachmann,* 201 Ill. 380, held that a widow whose family consists in part of the children of the deceased husband may repudiate an antenuptial contract releasing the widow's award. In the opinion it was said:

"The exemption of personal property of the debtor who is the head of a family can not be waived by a contract in advance entered into by the head of a family, for the reason the exemption is for the benefit of the family of the debtor as well as for himself, and the debtor cannot, for that reason, be permitted to contract in advance to deprive himself and family of the advantage intended to be preserved to them by the law. . . . The courts generally regard it as against public policy to sustain a waiver, by an executory agreement of the right conferred upon a debtor who is the head of a family, to claim as exempt property which the law designs shall be exempted from levy or sale for the benefit, in part, of such family." (pp. 390, 391.)

Watson v. Watson.

It was said that the right of the debtor who is not head of the family to debar himself by contract stands upon different grounds, the reason given being that such a claim is personal to the debtor. That parties contemplating marriage may relinquish their respective rights in the property of each other by an antenuptial contract, except as to homesteads, is held by the supreme court of Iowa, in *In re Estate of Adams,* 161 Iowa, 88. It was there declared that, having enjoyed the benefits of the contract after the death of her husband, the widow was not in a situation to contend that it was void. In pointing out that contracts in contravention of the statute are generally held void, the court cited the McMahill, Zachmann and Hafer cases, among others.

The Hafer case was again before the court. (36 Kan. 524, 13 Pac. 821.) This time it had been determined by the trial court that the widow continuing to occupy the land as her place of residence and homestead, and all the children being of age except one daughter who was seventeen, the homestead provision of the constitution could not be superseded by the antenuptial agreement, and that the land was subject to partition, and the widow was given one-half of the homestead. On appeal it was held that the homestead was not subject to partition so long as the widow remained unmarried and occupied it as her residence or until all of the children had arrived at the age of majority.

"The only question to be decided is, whether the antenuptial contract . . . is to be upheld and enforced with reference to the homestead, . . . or should it be divided under chapter 33, Comp. Laws of 1879?" (p. 527.)

Referring to the former Hafer decision, the court said:

"The court held, when this case was here before, that the antenuptial contract was valid, and provided a rule for settling the property rights of an intestate different from that laid down in the statute of descents and distributions, so far as all property was concerned, excepting only the homestead; and in reference to that it simply decided that such homestead could be occupied by the widow and minor children, independent of the said contract, until it was susceptible of partition. Now that the homestead may be divided, it is asked that the rule that applies to the distribution of the other property of an intestate shall not be applied to it. The constitution provides that a homestead occupied as a residence by the owner shall not be alienated without the joint consent of the husband and wife, when such a relation exists. The statute (ch. 33,

Comp. Laws of 1879) further provides that the homestead shall be exempt from distribution under any of the laws of the state, and from the payment of any of the debts of the intestate, but shall be the absolute property of the said widow and children. Both of these provisions are for the protection of the homestead, to preserve a home for the family against the claims of creditors. When, however, the widow marries again, or all of the children arrive at the age of majority, . . . then it may be divided exactly the same, so far as the widow and the children of the deceased are concerned, as any other property that the intestate may have died seized of. . . . We do not believe the claim of the widow to the homestead is sacred and inviolate as against the legal claims of the children, after it can be divided. In a contract fairly made, and for a valuable consideration, Virginia disclaimed any share she might possibly have in the future in the homestead, and agreed to take in lieu thereof the property stipulated for in the contract. . . . We think there are equally good reasons, in fairness and equity at least, for holding that she cannot now claim, in the face of and in opposition to her contract, what might otherwise have been her rights." (pp. 527, 528, 529.)

Attention was called to the statute of Illinois, relied on in the McMahill case touching exemption as long as the widow continued to occupy the homestead, and it was said that this rule did not obtain here; that when all of the children become of age the homestead may be divided. But in *Cross v. Benson,* 68 Kan. 495, 75 Pac. 558, and *Weaver v. Bank,* 76 Kan. 540, 94 Pac. 273, it was held that the widow constitutes a family within the meaning of the constitution. (See, also, *Postlethwaite v. Edson,* 102 Kan. 104, 171 Pac. 769.) Hence, under our decisions the homestead rule in case of the widow alone is as sacred and binding as when there are children occupying it with her.

The antenuptial contract which the court found to exist in this case did not destroy the widow's right to possession of the homestead; so long, therefore, as she continues to be a widow she has the right to remain therein.

To this extent, and this extent only, the former judgment and opinion must be changed, and the cause is remanded with directions to modify the judgment in accordance herewith.