564 So.2d 543 (1990)
Ruth Jurmu HARTWELL, Appellant,
v.
Jane BLASINGAME, As Personal Representative of the Estate of Reino Wilho Jurmu, and Harold Smith, Appellees.
No. 89-02859.
District Court of Appeal of Florida, Second District.
July 6, 1990.
Philip W. Dann of Philip W. Dann, P.A., St. Petersburg, for appellant.
No appearance for personal representative.
Michael K. Reese, Holiday, for appellee Harold Smith.
ALTENBERND, Judge.
Ruth Jurmu Hartwell appeals an order entered in the probate of Reino Wilho Jurmu's estate. Ms. Hartwell is the adult daughter of Mr. Jurmu. The order denied homestead status concerning a house which Mr. Jurmu devised by will to Harold Smith, Ms. Hartwell's former husband. We affirm the order, because Mr. Jurmu's surviving spouse, Ivadelle Purdue Jurmu, validly waived her constitutional homestead rights to this house in a prenuptial agreement pursuant to section 732.702, Florida Statutes (1979). Ms. Hartwell's statutory rights as an heir or lineal descendant, pursuant to section 732.401(1), Florida Statutes (1987), do not give her separate homestead rights or the authority to override the surviving *544 spouse's valid waiver of homestead. Since Mr. Jurmu was not survived by any minor children, we do not consider the effect which minor children would have on this constitutional issue.
We recognize that the rule of law and the result in this case conflict with those announced by the Fifth District in Wadsworth v. First Union National Bank, No. 89-00272 (Fla. 5th DCA Feb. 22, 1990) [15 F.L.W. D511]. The result, however, appears consistent with that of the Third District in City National Bank v. Tescher, 557 So.2d 615 (Fla. 3d DCA 1990), and with the reasoning in Judge Dauksch's dissent in Wadsworth.
Mr. Jurmu died on January 17, 1988, at the age of eighty-seven. He had been married twice. His first wife, Winona Jurmu, was Ms. Hartwell's mother. Ms. Hartwell was the only child of either marriage. Winona Jurmu died in 1975.
At some point prior to 1977, Ms. Hartwell was married to Mr. Smith. They had several children. Although the record is unclear, this marriage apparently ended prior to 1977 and the children stayed with Mr. Smith.
In 1977, Mr. Jurmu signed a Florida will which specifically devised his home to Mr. Smith. In the event that Mr. Smith predeceased him, the home would go to Mr. Smith's children who were Mr. Jurmu's grandchildren. Mr. Jurmu specifically made no provision in his will for Ms. Hartwell and other grandchildren "for reasons best known only to myself." Although the record is unclear, we assume that Ms. Hartwell was an adult at the time her father signed his will. Since Mr. Jurmu had no spouse or minor children at that time, Mr. Jurmu and his attorney had no reason to question the devise of non-home-stead property to Mr. Smith.[1]
In 1979, when Mr. Jurmu was seventy-eight, he decided to marry Ivadelle Purdue. The couple signed a prenuptial agreement in which they mutually waived any and all rights that each might have in the other's estate. The agreement states that the parties have been previously married to other spouses and "do not wish to disturb the plans previously made for the inheritance of their respective estates." In the agreement they specifically waive their rights to homestead, family allowance, elective share and any other right in the estate of the other. The agreement was prepared by an attorney, witnessed, and notarized.
Prior to any transfer of the house to Mr. Smith, the personal representative filed a petition to determine homestead status. Ivadelle Purdue Jurmu did not challenge the validity of her prenuptial agreement. She apparently is content to honor her agreement and to permit the house to be inherited by Mr. Smith. Ms. Hartwell, however, maintains that the house was homestead at the time of Mr. Jurmu's death and that it must descend pursuant to section 732.401(1), Florida Statutes (1987), because Mr. Jurmu was "survived by a spouse" and article X, section 4, of the Florida Constitution compels this result.
Article X, section 4, of the Florida Constitution, states:
Section 4. Homestead, exemptions.
c. The homestead shall not be subjected to devise if the owner is survived by a spouse or minor child, except that the homestead may be devised to the owner's spouse, if there be no minor child.
Section 732.702(1), Florida Statutes (1979), states:
Waiver of right to elect and of other rights. 
(1) The right of election of a surviving spouse, the rights of the surviving spouse as intestate successor or as a pretermitted spouse, and the rights of the surviving spouse to homestead, exempt *545 property, and family allowance, or any of them, may be waived, wholly or partly, before or after marriage, by a written contract, agreement, or waiver, signed by the waiving party.
Section 732.4015, Florida Statutes (1987), provides:
As provided by the Florida Constitution, the homestead shall not be subject to devise if the owner is survived by a spouse or minor child, except that the homestead may be devised to the owner's spouse if there is no minor child.
Section 732.401(1), Florida Statutes (1987), provides:
If not devised as permitted by law and the Florida Constitution, the homestead shall descend in the same manner as other intestate property; but if the decedent is survived by a spouse and lineal descendants, the surviving spouse shall take a life estate in the homestead, with a vested remainder to the lineal descendants in being at the time of the decedent's death.
Examining these constitutional and statutory provisions, there can be no question that Mr. Jurmu is "survived by a spouse" and that Ivadelle Purdue Jurmu is a "surviving spouse." In order to affirm the trial court, we are not anxious to rely upon the legal fiction, perhaps the ultimate legal fiction, that Ivadelle Jurmu has "predeceased" her husband.[2]Cf. Tescher. We believe a legal theory exists to explain the result in this case without pretending that Ivadelle Jurmu died upon the execution of the prenuptial agreement.
Admitting the fact that Ivadelle Jurmu is a surviving spouse, the first issue is whether she had the right to make a knowing and intelligent waiver of both her constitutional right under article X, section 4, and her statutory right under section 732.4015. Although the constitution and the statute do not expressly recognize a person's right to waive their protection, it has long been recognized that an individual is free to knowingly and intelligently forego a right which is intended to protect only the property rights of the individual who chooses to make the waiver. Abell v. Town of Boynton, 95 Fla. 984, 117 So. 507 (1928).[3] In some circumstances, individuals can even waive fundamental constitutional rights that protect their liberty as well as their property.[4] A person is sometimes permitted to contractually waive a constitutional right at a time prior to the time when the right normally would be invoked. Central Inv. Assocs., Inc. v. Leasing Serv. Corp., 362 So.2d 702 (Fla. 3d DCA 1978) (right to trial by jury in civil action). On the other hand, there are occasions when a constitutional right protects a substantial public interest and cannot be waived unilaterally by the most affected individual. Singer v. United States, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965) (the people's interest in trial by jury in criminal cases requires the state's consent to the defendant's waiver of this sixth amendment right). In light of all these considerations in this case, we see no reason for the state to prohibit Ivadelle Jurmu from validly waiving her homestead rights at the inception of the marital relationship which invoked those rights.
Having determined that a spouse may validly waive his or her homestead rights through a prenuptial agreement under section 732.702, the next issue is whether that waiver is binding on lineal descendants or other statutory heirs. This issue depends on whether an heir or lineal descendant is within the class of persons who are protected by this section of the constitutional *546 homestead provision. We agree with Judge Dauksch that "article X, section 4(c), is designed to protect two classes of persons only: surviving spouses and minor children." Wadsworth, 15 F.L.W. at D513. Although the elimination of the "head of household" concept from the constitution expanded the class of persons entitled to protect their home from creditors and now permits a surviving spouse to raise his or her rights under section 4(c), even if the household or family unit has been abandoned, we see nothing in that change which would expand the class of persons who are entitled to receive this homestead protection in a probate proceeding beyond the surviving spouse and minor children.[5]See In re Estate of Scholtz, 543 So.2d 219 (Fla. 1989). Thus, Ms. Hartwell has no right to seek the protection of this constitutional provision.
On the other hand, section 732.401(1) may give Ms. Hartwell a statutory right, as a lineal descendant, to raise the validity of the surviving spouse's waiver. In that posture, however, an adult child cannot receive statutory rights which are superior to those of the surviving spouse. If the surviving spouse's waiver is valid, the lineal descendant has no statutory claim to the property.
Because we hold that the "law and the Florida Constitution" permit this devise when the surviving spouse has signed a valid waiver, the rule of descent provided in section 732.401(1), Florida Statutes (1987), does not apply in this case and the trial court correctly upheld the terms of Mr. Jurmu's will.
Affirmed.
RYDER, A.C.J., and PARKER, J., concur.
NOTES
[1] It is interesting to note that the house in question was not homestead property during the interval between the death of Mr. Jurmu's first wife and his marriage to his second wife. At that time, homestead protection existed only for property of the head of a household. Art. X, § 4, Fla. Const. (1968). Since Ms. Hartwell was an adult and Mr. Jurmu's first wife was deceased, he was not the head of a household. Croker v. Croker, 51 F.2d 11 (5th Cir.1931). Essentially, Ms. Hartwell is now attempting to regain homestead rights through her stepmother that she ceased to have in her own right many years ago.
[2] "The reports of my death are greatly exaggerated." Mark Twain, 1897, cable from London to the Associated Press.
[3] "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938).
[4] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (fifth amendment rights and sixth amendment right to counsel); Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (fourth amendment right prohibiting unreasonable search and seizure); Adams v. United States, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942) (sixth amendment right to jury trial in criminal proceeding).
[5] It should be noted that "heirs of the owner" are included in the class of persons who receive the benefit of the constitutional exemptions of property from the claims of creditors. Art. X, § 4(b), Fla. Const. Since heirs are omitted from article X, section 4(c), it is reasonable to assume that this constitutional protection concerning transfer of homestead property at death exists only for the surviving spouse and minor children.