PER CURIAM.
We have for consideration proposals for amending the Rules Regulating the Florida Bar. We have jurisdiction. See art. V, § 15, Fla. Const.
In the November 2004 election, voters of the State of Florida approved the following amendment to the Florida Constitution:
In any medical liability claim involving a contingency fee, the claimant is entitled to receive no less than 70% of the first $250,000.00 in all damages received by the claimant, exclusive of reasonable and customary costs, whether received by judgment, settlement, or otherwise, and regardless of the number of defendants. The claimant is entitled to 90% of all damages in excess of $250,000.00, exclusive of reasonable and customary costs and regardless of the number of defendants. This provision is self-executing and does not require implementing legislation.
Art. I, § 26, Fla. Const. In response to this amendment, and pursuant to Rule Regulating The Florida Bar 1 — 12.1(f),[1] fifty-five members of The Florida Bar, led by attorney Stephen H. Grimes, filed a petition (“Grimes petition”), seeking an amendment to Rule Regulating the Florida Bar 4 — 1.5(f)(4)(B) governing fees and costs of legal services. The Grimes petition proposed that the following language be added as new subdivision 4 — 1.5(f)(4)(B)(iii):
(iii) Notwithstanding the preceding provisions of subdivision (B), in medical liability cases, attorney fees shall not exceed the following percentages of all damages received by the claimant, exclu *1037 sive of reasonable and customary costs, whether received by judgment, settlement, or otherwise, and regardless of the number of defendants:
a. Thirty percent (30%) of the first $250,000.00.
b. Ten percent (10%) of all damages in excess of $250,000.00.
Subsequently, The Florida Bar filed a response in opposition to the petition.[2] -One of the main objections raised by the Bar in response to the Grimes petition was the lack of any applicable provision which would allow a medical liability claimant to waive the right granted by the constitutional amendment in order to obtain counsel of his or her choosing. Many of the comments filed in response to the publication of the Grimes petition’s proposal in The Florida Bar News also raised the same objection.
After hearing oral argument, much of which addressed the waiver issue, the Court issued an order directing The Florida Bar to submit its own proposed amendment to rule 4-1.5(f)(4)(B), including but not limited to the following core features:
1. An acknowledgement of the provisions of article I, section 26 of the Florida Constitution;
2. An affirmative obligation on the part of an attorney contemplating a contingency fee contract with a potential client to notify any potential client with a medical liability claim of the provisions of article I, section 26. Such notice provision may include a standard written notice form; and
3. A procedure whereby a medical liability claimant may knowingly and voluntarily waive the rights granted by article I, section 26. Such a proposed procedure may involve judicial oversight or review of the waiver and may include a standard waiver form or otherwise provide for the protection of the rights of a potential client.
In response to the Court’s order, the Bar appointed a Special Committee on Amendment 3, chaired by attorney Major B. Harding, which drafted and submitted to the Court a proposed amendment to rule 4-1.5(f)(4)(B).
After being submitted to the Court, the Bar’s proposal was published in The Florida Bar News for comment. Several comments were received, including comments in opposition to the Bar’s proposal filed by attorney Grimes on behalf of the original fifty-five petitioners, and the Court conducted a second oral argument. We now decline to adopt the Grimes proposed amendment and adopt the Bar’s proposed amendment to rule 4-1.5(f)(4)(B) with modifications.
The major components of the rule as proposed by the Bar are: (1) a requirement that a lawyer entering into a contingency fee agreement with a medical liability claimant must inform the client, both orally and in writing, of the client’s rights under article I, section 26; (2) a requirement that, if the lawyer chooses not to accept representation of a client under the terms of article I, section 26, the lawyer must advise the client, “both orally and in writing of alternative terms, if any, under which the lawyer would accept the representation of the client, as well as the client’s right to seek representation by another lawyer willing to accept the representation under the terms of article I, section 26, Florida Constitution, or a lawyer willing to accept the representation on a fee basis that is not contingent;” and (3) *1038 a requirement that.if a client desires to waive any rights under article I, section 26, such waiver - must be in writing, under oath, and in the form provided for in the rule; the waiver and acknowledgment form proposed by the Bar to be included in rule 4-1.5(f)(4)(B)(iii) is detailed and specifically acknowledges and sets forth the rights granted to medical liability claimants under article I, section 26.
The comments in opposition to the Bar’s proposal center around two main issues: first, whether the right granted in the constitution may be waived; and, second, whether the courts must approve any waiver. The first contention is that the personal right granted to medical liability claimants by article I, section 26 may never be waived because it embraces certain policies that are beyond the control of the claimants themselves. We note, however, that on its face, article I, section 26 unquestionably creates a personal right, one for the direct benefit of a medical malpractice claimant. It is entitled “Claimant’s right to fair compensation” and provides that “the claimant is entitled to receive” the stated percentages of the ■ damages. Art.. I, § 26(a), Fla. Const. Further, the Bar and other commentators point out that most personal constitutional rights may be waived. See In re Shambow’s Estate, 153 Fla. 762, 15 So.2d 837, 837 (1943) (“It is fundamental that constitutional rights which are personal may be waived.”); see also City of Treasure Island v. Strong, 215 So.2d 473, 479 (Fla.1968) (“[I]t is firmly established that such constitutional rights designed solely for the protection of the individual concerned may be lost through waiver....”). Numerous instances of judicial recognition of the right to waive constitutional rights have been cited to the Court. For example, even the most basic fundamental constitutional rights, such as the Fifth Amendment right to remain silent and the Sixth Amendment right to counsel may be knowingly and voluntarily waived. See Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Additionally, Florida’s highly valued constitutional homestead protection is subject to waiver. See Hartwell v. Blasingame, 564 So.2d 543, 545 (Fla. 2d DCA 1990) (“Although the constitution and statute do not expressly recognize a person’s right to waive [homestead] protection, it has long been recognized that an individual is free to knowingly and intelligently fore-go a right which is intended to protect only the property rights of the individual who chooses to make the waiver.”), approved, 584 So.2d 6 (Fla.1991). We also note that nothing in the plain language of article I, section 26 prohibits a waiver of the rights granted. Nevertheless, in the context of this rules case, we decline to actually determine the legal issue of whether the rights granted to medical malpractice claimants under article I, section 26 may be waived.
We have also considered the point raised in opposition to the Bar’s proposal that it does not require judicial approval of all waivers of article I, section 26 rights. Attorney Grimes and the original fifty-five petitioners contend that judicial approval of all such waivers must be required due to the conflicting interests that arise when a lawyer negotiates with a potential client to waive a constitutional right in order to obtain the lawyer’s services. Accordingly, they urge the Court to adopt an alternative waiver provision with numerous restrictions under which all waivers would be subject to judicial approval which could be given only if “the client has been unable to retain an attorney because of the fee limitations imposed by the Florida Constitution and this rule.”
We acknowledge and share the concern that where a lawyer negotiates with a potential client to waive his or her rights under article I, section 26 in or *1039 der to obtain the lawyer’s services for a fee in excess of that which would otherwise be available under the constitutional provision, there are conflicting interests involved. However, we conclude the alternative waiver provision suggested by opponents goes well beyond the nature of the right granted by article I, section 26 and beyond ensuring that any waiver of that right is knowing and voluntary. Instead, the alternative proposal, for example, would require a determination as to whether the waiver is “necessary” and whether the fee agreed upon is justified or appropriate. In addition, the alternative proposal places a burden upon the potential client, in that it conditions judicial approval of the waiver upon a finding that the client has conducted a “reasonable effort” to obtain counsel willing to provide representation without a waiver. Upon review, we reject these proposed restrictions because we do not find it appropriate to place the courts in the position of unduly restricting the right of a competent adult client to waive his or her rights under article I, section 26. Instead, we believe the court’s role, when appropriate, is to ensure that any waiver is made knowingly and voluntarily-
We acknowledge the merit of the Grimes petition that this Court should take some action to recognize the effect of this amendment. However, in recognition of the passage of article I, section 26 and its impact upon agreements for legal representation between claimants and attorneys in Florida, we adopt the proposal by the Bar and reject the Grimes petition. All participating in these proceedings agree on the need for action, with many pointing out that since the passage of article I, section 26, numerous medical malpractice claimants have been made aware of their rights under the amendment and have chosen to waive their rights under that provision in order to obtain counsel of choice. Given the reality that the amendment is now in effect and that waivers are currently being made, we agree there is a need for guidance and uniformity in order to protect both the claimants and attorneys involved. The rule acknowledging the provisions of the amendment and providing for waiver of the personal right granted by the amendment should meet this need. ■
We conclude that the safeguards included in the Bar’s proposal, with minor modification, are sufficient to balance the conflicting interests of the attorney and the potential client at the point in time where negotiation of a contract for representation, including the agreed-upon fee, occurs. As noted, the Bar’s proposal allows medical malpractice claimants to waive their rights under article I, section 26 by executing a detailed form of waiver. The waiver form not only is extremely detailed but, importantly, sets forth the actual language of article I, section 26 and requires the client to specifically acknowledge that he or she (1) has been advised that signing the waiver releases an important constitutional right; (2) has been advised of the opportunity to consult with separate and independent counsel and to have the waiver explained or reviewed by a court;[3] (3) agrees to an increase in the attorney fee that would otherwise be owed if the constitutional provision were not waived; (4) has three business days in which to cancel the waiver; (5) wishes to engage the named lawyer or law firm, but is unable to do so because of the constitutional limitation and therefore knowingly and voluntarily waives the constitutional limitation in consider *1040 ation of the lawyer or law firm’s agreement to represent him or her; and (6) has selected the named lawyer or law firm as counsel of choice, could not otherwise engage their services without the waiver, and specifically states that the waiver is knowingly and voluntarily made.
Further, in order to make the consequences of the waiver even more explicit to a client executing this waiver form, we modify the form to require the client to acknowledge not only that he or she is agreeing to an increased fee, but also to specifically acknowledge the maximum contingency fee percentages currently set forth in rule 4 — 1.5(f)(4)(B)(i), up to which the lawyer and client may agree, without prior court approval, if the waiver is executed. Under the rule as adopted, judicial approval is mandatory only where a client waives his or her rights under article I, section 26 and agrees to a contingent fee in excess of the maximum contingency fee percentages set forth in rule 4-1.5(f)(4)(B)(i). In such a case, court approval under the process set forth in rule 4-1.5(f)(4)(B)(ii) is necessary. Subdivision (f)(4)(B)(ii) states:
If any client is unable to obtain an attorney of the client’s choice because of the limitations set forth in subdivision (f)(4)(B)(i), the client may petition the court •... for approval of any fee contract between the client and an attorney of the client’s choosing. Such authorization shall be given if the court determines the client has a complete understanding of the client’s rights and the terms of the proposed contract.
We conclude that these provisions are sufficient to protect the client’s interests when negotiating a contract for representation with counsel of choice and to ensure that if the client agrees to waive his or her rights under article I, section 26, the waiver is knowingly and voluntarily made.[4]
We also wish to emphasize that, although the rule we adopt does not require judicial approval of all waivers, it does not prohibit a client from requesting judicial review of the waiver, nor does it prohibit a court from inquiring into the issue of whether the waiver has been knowingly and voluntarily made. We encourage trial judges to be alert and responsive to this issue.
Accordingly, we hereby adopt the amendment to Rule Regulating the Florida Bar 4 — 1.5(f)(4)(B) as set forth in the appendix to this opinion. Additions are indicated by underscoring. The commentary is offered for explanation only and is not adopted as an official part of the rule. The amendment shall become effective immediately upon the release of this opinion.
It is so ordered.
LEWIS, C.J., and ANSTEAD, PARIENTE, QUINCE, and CANTERO, JJ., concur.
*1041 WELLS, J., concurs in part and dissents in part with an opinion, in which BELL, J., concurs.

. Rule Regulating the Florida Bar 1-12.1(f) states that ‘‘[p]etitions to amend these Rules Regulating the Florida Bar may be filed by the board of governors or by 50 members in good standing, provided that any amendments proposed by members of the bar shall be filed 90 days after filing them with The Florida Bar.”

. The proposal was then published for comment in The Florida Bar News. Literally hundreds of comments were received from Florida attorneys, various organizations, and private citizens alike, with almost all of the comments opposing the proposed amendment.

. We have added the language advising the client of the right to have a hearing on the waiver before a judge.

. In reaching this conclusion, we also rely upon the representation of The Florida Bar, in its submission to this Court, that its decision to propose a rule that does not require judicial approval of all waivers was based, in part, upon input from current members of the judiciary regarding their actual experience with waivers. According to the Bar, judges who were consulted advised that because judicial review under the current rule is ex parte, with no opposition stated, it is "in effect, a form over substance requirement," and they indicated that "judicial review, if required in this waiver scenario, would likely unfold as it does for current judicial review of fees in excess of the stated maximum fees in 4-1.5(f)(4)(B)(i).” (Fla. Bar’s Notice of Filing 4.) Additionally, we rely upon the Bar's representation that under the current review procedures, no complaints of overreaching have been made and that judges who were consulted were of the opinion that complaints would not be made even if judicial oversight were required for all waivers. (Fla. Bar’s Notice of Filing 5.)