No. 129,334

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KATHY ALLISON, et al.,
*Appellees*,

v.

DIAN SABIN-MITCHELL, DELBERT SHIRLEY, BETTY SHIRLEY, and
Any Other Unknown Occupants,
*Appellants*,

and

In the Matter of the Estate of NOLAN K. MITCHELL.

SYLLABUS BY THE COURT

1.

Under both article 15, section 9 of the Kansas Constitution and K.S.A. 60-2301, one's homestead is protected from alienation without spousal consent.

2.

Under the Kansas Uniform Premarital Agreement Act (KUPAA), a premarital agreement is an agreement between prospective spouses made in contemplation of marriage and to be effective upon marriage. It must be in writing and signed by both parties. K.S.A. 23-2402(a); K.S.A. 23-2403.

3.

Because a premarital agreement becomes effective upon marriage, a waiver of homestead rights in a premarital agreement that complies with KUPAA does not violate the Kansas Constitution or K.S.A. 60-2301.

Appeal from Elk District Court; CHARLES M. HART, judge. Submitted without oral argument. Opinion filed June 12, 2026. Affirmed.

*John R. Horst*, of John R. Horst, P.A., of Caney, for appellant Dian Sabin-Mitchell.

*Monte L. Miller*, of Miller and Miller, Chtd., of Emporia, for appellee Kathy Allison.

Before CLINE, P.J., BOLTON FLEMING, J., and JEFFREY GETTLER, District Judge, assigned.

CLINE, J.: The sole question in this appeal is whether spousal homestead rights can be waived in a premarital agreement. For the reasons explained below, we find the answer is yes.

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts are largely undisputed and mostly immaterial to the legal issue presented in this appeal. In short, Dian Sabin-Mitchell and Nolan K. Mitchell executed a premarital agreement a few days before they married. In that agreement, they stated their marriage would not impact their rights in real or personal property they each owned before or acquired after their marriage. They also specifically waived:

"(d) Any and all rights, if any, to all or a portion of the property of the other party whether by way of dower, courtesy, homestead, widow's allowance, statutory share or provision, descent, community property inheritance, succession or otherwise."

At the end of their agreement, they stated:

"(18) Each party further agrees and affirms as follows:
"(a) That the party did execute the agreement voluntarily; and
"(b) That this agreement is not unconscionable when it was executed; and

2

"(c) Both parties were provided, prior to execution of this agreement, a fair and reasonable disclosure of the property or financial obligations of the other party;

"(d) That each party did have, or reasonably could have had, an adequate knowledge of the property or financial obligations of the other party."

Nolan passed away a few years into the marriage. This sparked a probate dispute between Nolan's children and Dian about ownership of and rights to the home the couple occupied, which Nolan owned before they married. Dian claimed homestead and other rights to the home, while Nolan's children claimed Dian waived her homestead and any other rights to the home in the premarital agreement.

The parties submitted their disputes to the district court on stipulated facts. The court ultimately upheld Dian's waiver in the premarital agreement, finding she had no rights to the home.

Dian appeals the district court's ruling, claiming the statutes that allow for premarital waiver of spousal homestead rights, K.S.A. 59-6a213 and K.S.A. 23-2404, violate the Kansas Constitution.

REVIEW OF DIAN'S APPELLATE CHALLENGE

*Homestead Protections*

Both the Kansas Constitution and Kansas statutes protect property rights in a person's primary residence. These rights, known as homestead rights, were established "for the benefit of the family and of society—to protect the family from destitution, and society from the danger of her citizens becoming paupers." *Morris v. Ward*, 5 Kan. 239, 244, 1869 WL 429 (1869).

Article 15, section 9 of the Kansas Constitution states:

"A homestead to the extent of one hundred and sixty acres of farming land, or of one acre within the limits of an incorporated town or city, occupied as a residence by the family of the owner, together with all the improvements on the same, shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists; but no property shall be exempt from sale for taxes, or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon."

K.S.A. 60-2301 largely mirrors the Kansas Constitution, but with two additions: (1) it recognizes homestead rights in a manufactured or mobile home; and (2) it recognizes homestead rights by an owner without a family.

Under both article 15 and K.S.A. 60-2301, one's homestead is protected from alienation without spousal consent. This rule is rooted in similar historical societal concerns, such as protecting married women and families from an "exploitative or feckless husband imperil[ing] the family's survival by selling the family home." Morantz, *There's No Place Like Home: Homestead Exemption and Judicial Constructions of Family in Nineteenth-Century America*, 24 Law & Hist. Rev. 245, 262 (2006).

*Premarital Agreements*

Because a homestead cannot be alienated without the consent of "husband and wife," Kansas courts historically have not allowed a premarital waiver of homestead rights. Kan. Const. art. 15, § 9; see *Hoard v. Jones*, 119 Kan. 138, 152, 237 P. 888 (1925) ("The homestead rights of the wife, provided for by our constitution [art. 15, § 9] . . . cannot be affected by an antenuptial agreement."); *Watson v. Watson*, 106 Kan. 693, Syl., 189 P. 949 (1920) ("The restrictions of the constitution and statutes touching the alienation of a homestead are for the protection of the family, and cannot be varied or

4

avoided by an antenuptial contract providing that in case the wife survives the husband she is to have no part in his estate.").

But this landscape changed in 1988 with the enactment of the Kansas Uniform Premarital Agreement Act (KUPAA). See K.S.A. 23-2401 et seq. Before KUPAA, the common law governed marital agreements executed before or after marriage. See *In re Marriage of Traster*, 301 Kan. 88, 96-97, 339 P.3d 778 (2014). After KUPAA, the common-law analysis of premarital agreements was superseded by statute. See K.S.A. 23-2401 et seq.; 301 Kan. at 97.

Under KUPAA, a premarital agreement is "an agreement between prospective spouses made in contemplation of marriage and to be effective upon marriage." K.S.A. 23-2402(a). It must be in writing and signed by both parties. K.S.A. 23-2403. And, subject to certain limitations, KUPAA grants parties broad contractual powers to address property rights, including:

"(1) The rights and obligations of each of the parties in any of the property of either, or both, whenever and wherever acquired or located;

"(2) the right to buy, sell, use, transfer, exchange, abandon, lease, consume, expend, assign, create a security interest in, mortgage, encumber, dispose of or otherwise manage and control property;

"(3) the disposition of property upon separation, marital dissolution, death or the occurrence or nonoccurrence of any other event;

"(4) the modification or elimination of spousal support;

"(5) the making of a will, trust or other arrangement to carry out the provisions of the agreement;

"(6) the ownership rights in and disposition of the death benefit from a life insurance policy;

"(7) the choice of law governing the construction of the agreement; and

"(8) any other matter, including their personal rights and obligations, not in violation of public policy or a statute imposing a criminal penalty." K.S.A. 23-2404(a).

5

Additionally, and pertinent to this case, in 1994 the Legislature adopted K.S.A. 59-6a213 as part of the probate code, which currently states:

> "The right of election of a surviving spouse and the rights of the surviving spouse to the homestead, the homestead allowance or the family allowance, or all of them, may be waived, wholly or partially, *before or after marriage*, by a written contract, agreement, consent to any instrument, or waiver signed by the surviving spouse." (Emphasis added.) K.S.A. 59-6a213(a).

*The Constitutionality of K.S.A. 23-2404 and K.S.A. 59-6a213*

Dian admits she executed a premarital agreement which contained a waiver of her homestead rights. But she contends the waiver is legally unenforceable. Relying on pre-KUPAA common law, she contends that because the Kansas Constitution prohibits alienation of a homestead "without the joint consent of husband and wife," this means prospective spouses cannot waive their homestead protections. Kan. Const. art. 15, § 9. That is, she contends those protections cannot be waived until the parties are married. And she claims the provision in K.S.A. 59-6a213, which allows a spouse to waive homestead rights "before . . . marriage," and the provisions in K.S.A. 23-2404(1), (2), and (3), which allow premarital agreements regarding various property rights, are unconstitutional.

*Standard of Review*

We exercise unlimited review over questions involving a statute's constitutionality. *City of Wichita v. Griffie*, 318 Kan. 510, 516, 544 P.3d 776 (2024). And we are obligated to presume statutes are constitutional and resolve all doubts in favor of a statute's validity. Likewise, we must interpret a statute in a way that makes it constitutional if there is any reasonable construction that would maintain the Legislature's apparent intent. *Solomon v. State*, 303 Kan. 512, 523, 364 P.3d 536 (2015).

6

*KUPAA changed the legal landscape governing premarital agreements.*

As mentioned, Dian relies on pre-KUPAA common law to support her contention that homestead rights cannot be waived in a premarital agreement. See *In re Estate of Place*, 166 Kan. 528, 531, 203 P.2d 132 (1949); see also *Hoard*, 119 Kan. at 152 ("The homestead rights of the wife, provided for by our constitution [art. 15, § 9] . . . cannot be affected by an antenuptial agreement."); *In re Estate of Johnson*, 202 Kan. 684, 694, 452 P.2d 286 (1969); *In re Estate of Neis*, 170 Kan. 254, 264, 225 P.2d 110 (1950); *Watson*, 106 Kan. 693, Syl. But, as mentioned, KUPAA changed the law on premarital agreements.

Under KUPAA, a prenuptial agreement does not take effect until the parties marry. K.S.A. 23-2405; see *In re Marriage of Nelson*, 58 Kan. App. 2d 920, 925, 475 P.3d 1284 (2020) ("Once a premarital agreement is signed and the parties to the agreement become married, the agreement has the same effect as any other written contract."). Under this provision, the promises in a premarital agreement ripen upon marriage, making them enforceable between the spouses at that time. If they do not marry, the agreement never becomes effective. And since the agreement does not become effective until they become spouses, then neither does a spousal waiver of homestead rights in that agreement. This means the waiver of homestead rights in a premarital agreement is effectively made when the parties become husband and wife and therefore does not violate the Kansas Constitution or K.S.A. 60-2301.

While we recognize our holding here departs from the pre-KUPAA common law, we presume the Legislature intended that result when it enacted KUPAA and K.S.A. 59-6a213. See *In re M.M.*, 312 Kan. 872, 875, 482 P.3d 583 (2021) (Courts generally presume that the Legislature acts with full knowledge about the statutory subject matter, including prior and existing law and judicial decisions interpreting the same.); *Stueckemann v. City of Basehor*, 301 Kan. 718, 745, 348 P.3d 526 (2015) (When the

Legislature revises an existing law, the court presumes that the Legislature intended to change the law as it existed before the amendment.).

Further, we assume the Legislature does not enact meaningless legislation. See *Jarvis v. Kansas Dept. of Revenue*, 312 Kan. 156, 165, 473 P.3d 869 (2020) (courts construing statutes presume the Legislature does not intend to enact meaningless legislation). Dian's interpretation would render premarital agreements unenforceable and ineffective for any decision that is mandated to occur between spouses, requiring a reaffirmation of any such decisions in a postnuptial agreement—a result that is impractical.

Alternatively, other than pre-KUPAA common-law interpretations of the Kansas Constitution, Dian offers no reason why constitutional homestead rights cannot be waived in a premarital agreement, particularly considering the safeguards built into KUPAA and K.S.A. 59-6a213, which require the agreements to be made knowingly and voluntarily, and not unconscionable. K.S.A. 23-2407(a); K.S.A. 59-6a213(b).

In *Hartwell v. Blasingame*, 564 So. 2d 543 (Fla. Dist. Ct. App. 1990), a Florida court addressed a similar question about whether Florida's constitutional protection of spousal homestead rights prohibited premarital waiver of that right. That court saw no reason why a spouse could not knowingly and intelligently waive the right, explaining:

> "Although the constitution and the statute do not expressly recognize a person's right to waive their protection, it has long been recognized that an individual is free to knowingly and intelligently forego a right which is intended to protect only the property rights of the individual who chooses to make the waiver. In some circumstances, individuals can even waive fundamental constitutional rights that protect their liberty as well as their property. A person is sometimes permitted to contractually waive a constitutional right at a time prior to the time when the right normally would be invoked. On the other hand, there are occasions when a constitutional right protects a substantial public interest and cannot be

8

waived unilaterally by the most affected individual. In light of all these considerations in this case, we see no reason for the state to prohibit [the surviving spouse] from validly waiving her homestead rights at the inception of the marital relationship which invoked those rights. [Citations omitted.]" 564 So. 2d at 545.

Likewise, we see no reason why a spouse cannot waive their homestead rights preserved by the Kansas Constitution and K.S.A. 60-2301 at the inception of their marriage—that is, when the premarital agreement containing such waiver becomes effective.

For these reasons, we therefore affirm the district court's decision finding that Dian has waived her homestead rights.

We note that Dian raised another issue on appeal, regarding whether a transfer on death deed that Nolan executed before the premarital agreement (in which Nolan gave the home at issue to his children) was subject to her homestead rights. Since we find that Dian waived her homestead rights, we need not reach this issue.

## ATTORNEY FEES

On appeal, appellee asks us to award her attorney fees, despite the district court's denial of such award.

"A motion for attorney fees on appeal must be made under Rule 5.01 and be filed no later than 14 days after oral argument. If oral argument is waived, the motion must be filed no later than 14 days after the day argument is waived or the date of the letter assigning the case to a non-argument calendar, whichever is later. An affidavit must be attached to the motion specifying:

"(A) the nature and extent of the services rendered;

"(B) the time expended on the appeal; and

"(C) the factors considered in determining the reasonableness of the fee."

Supreme Court Rule 7.07(b)(2) (2026 Kan. S. Ct. R. at 52).

Here, the only reference to attorney fees by appellee is in the last sentence of her brief, where she asks for this court to affirm the district court and assess her attorney fees and costs due to Dian "using case law precedent overturned long ago." She did not follow the procedure outlined in Rule 5.01, so we find she has waived any claim for fees on appeal. We therefore deny the request.

Affirmed.