519 So.2d 692 (1988)
In re ESTATE OF Ira C. BOYD, Deceased.
No. 87-0093.
District Court of Appeal of Florida, Fourth District.
February 3, 1988.
Craig Boudreau, of Kohl and Mighdoll, West Palm Beach, for appellant-William Joel Moore.
James E. Weber, of James E. Weber, P.A., West Palm Beach, for appellee-Joanne Price, Personal Representative of the Estate of Jettie R. Boyd, deceased.
ANSTEAD, Judge.
We affirm because we do not believe the concept of abandonment, in the manner in which it was applied in Barlow v. Barlow, 156 Fla. 458, 23 So.2d 723 (1945), survived the amendment of the homestead provisions of the Florida Constitution in 1985. Accordingly, we believe the appellee, as the surviving spouse, is entitled to the homestead real property of her deceased husband.[1]
It appears that the abandonment concept set out in Barlow and other cases was inextricably tied to the "head of household" requirement of the prior constitutional homestead scheme.[2] The abandonment concept appears to be predicated on two possible bases. The first is that a homeowner whose spouse abandons him and sets up her own residence elsewhere with no intent of returning cannot be a "head of household" because there is no longer a family residing with him in the home. In that case, the property loses its homestead status by definition and the surviving spouse has no claim simply because there is no homestead. A second possible basis for Barlow's holding is the court's concern that it would be inequitable to allow a spouse who has "abandoned" the homestead to come back and claim it when her spouse dies. This equitable concern would also appear to be tied to the family unit definition of homestead. Even if it is not, however, we do not believe the courts have the authority to act upon such concerns no matter what the equities may be, in view of the clear and unequivocal language to the contrary in the constitutional and statutory homestead scheme.[3]
The 1985 amendment to the Constitution conferred homestead status on any real property owned and occupied by a "natural *693 person" and eliminated the previous requirement that the property be owned by a "head of household." It is undisputed that the property in question is homestead property as defined by Article X, Section 4(a) of the Florida Constitution, since the appellee's deceased husband was a natural person who owned and occupied the property at the time of his death. Article X, Section 4(c) provides that the homestead is not subject to devise if the owner is survived by a spouse. Also see § 732.4015, Fla. Stat. (1985). In this case the owner was survived by his spouse, the appellee, although they were living apart at the time of the owner's death. Section 732.401 provides that the homestead property will descend in the same manner as other intestate property, which means in this case that it will go to the appellee, there being no lineal descendants of the deceased. See § 732.4015. There is no language in the Constitution or the statutes conditioning the surviving spouse's rights on her residing with the deceased homesteader at the time of his death. In our view, we cannot judicially graft such a condition upon the homestead scheme set out in the Constitution and the statutes.
We believe the issue we have decided is one of great public importance and we certify the following question to the Supreme Court:
IS THE CONCEPT OF ABANDONMENT AS SET OUT IN BARLOW V. BARLOW STILL VIABLE IN VIEW OF THE 1985 AMENDMENT OF THE HOMESTEAD PROVISIONS OF THE FLORIDA CONSTITUTION?
GLICKSTEIN J., concurs specially with opinion.
WALDEN, J., concurs in part, dissents in part with opinion.
GLICKSTEIN, Judge, concurring specially.
I agree with Judge Anstead's analysis and write to add some peripheral thoughts. I wish to thank counsel for responding to our post-conference order which requested that they provide us with any legislative history they could locate on the question of whether the doctrine of waiver by abandonment survived the substitution of the words "a natural person" for the words "the head of a family" in Section 4 of Article X of the Florida Constitution. Counsel for both parties cooperated by furnishing us with excerpts from the Journal of the House of Representatives and the Journal of the Senate. Although these excerpts did not inform us of the legislative intent in the revision of the pertinent language herein, I am grateful for counsels' efforts.
The First District Court of Appeal in Ellsworth v. Insurance Company of North America, 508 So.2d 395 (Fla. 1st DCA 1987), has stated that judicial notice is not a prerequisite to appellate courts' consideration of legislative staff summaries in construing statutes. Although the appellate courts have expressed a preference for introduction of legislative staff reports and other such materials through the mechanism of judicial notice at the trial court level, such reports have apparently on occasion been first introduced and accepted at the appellate level through the advocacy of counsel. See Department of Health and Rehabilitative Services v. Shatto, 487 So.2d 1152, 1153 (Fla. 1st DCA 1986). The reason for the preference that these documents be introduced below is twofold (1) to assure the authenticity of the documents; and (2) to allow the party opposing the introduction of the materials to search for other legislative history materials refuting the position taken by the proponent of the material's position. Id. at 1153.
It strikes me that substance over form makes justice possible; and that whatever fairly enables an appellate court to reach an informed decision is consistent with the goal of effective administration of justice.
WALDEN, Judge, concurring in part, dissenting in part.
I respectively dissent as to the majority's decision, but concur in the certified question to the Florida Supreme Court as one of great importance.
*694 I believe that the doctrine of abandonment survived the revision of the homestead provision of the Florida Constitution.
The majority takes the position that because abandonment as applied in Barlow v. Barlow, 156 Fla. 458, 23 So.2d 723 (1945), was "inextricably tied" to the "head of household" requirement, it is no longer a viable concept now that the "head of household" requirement has been deleted. I do not agree with this position.
The majority espouses two bases on which the concept of abandonment possibly lies. One being that by leaving the home without an intent to return, the property loses its homestead status by definition, and therefore, the surviving spouse has no claim because there is no homestead. Obviously, if this were the sole basis of abandonment, I would concur with the majority that abandonment no longer applies to the present day situation. The other basis, according to the majority, is an equitable concern, which can not be acted upon by the courts "in view of the clear and unequivocal language to the contrary in the constitutional and statutory homestead scheme."
A close reading of Barlow reveals that the basis for the concept of abandonment remains viable in spite of the revised constitutional definition of homestead. In Barlow, the wife had voluntarily left the decedent's home, knowing that his death was imminent. She had secured employment in another city where she had expected to reside, and made it known that she had no intent of returning. She also had engaged counsel to procure a divorce, but no divorce had been obtained at the time of decedent's death.
The Florida Supreme Court, in finding that the wife had abandoned the homestead and any claim to it, stated:
The mere fact of being the wife of Barlow does not entitle her to homestead rights in his estate, neither do we find anything in the facts detailed that would in equity entitle her to the homestead. On the other hand we think that when the wife announces that she has moved out of the home for keeps and carries her belongings with her, secures employment in a city over 300 miles distant, announces to the world that she is through and secures an attorney to procure a divorce, this constitutes an abandonment of the homestead. Her conduct was in every sense consistent with abandonment and inconsistent with any purpose of return. Under such a state of facts she will not be permitted to return and lay claim to the homestead after Barlow is dead. A claim for the divorce and a homestead cannot be asserted in the same breath.
23 So.2d at 724.
The historical purpose of the homestead provision was to protect those legally dependent on the decedent because of a family relationship. See Deem v. Shinn, 297 So.2d 611 (Fla. 4th DCA 1974). It is clear from the language in Barlow, that the concept of abandonment is based on the premise that once a spouse leaves the homestead with no intent of returning, she is no longer a part of the family unit who is entitled to the "protection" of homestead. Without the family relationship, there is no compelling reason to restrict the owner's freedom to devise his property as he wishes.
Although, as the majority states in its footnote, the legislature eliminated section 222.19(1) of the statutes, which had declared that the legislative intent in providing homestead exemptions was to shelter the family and surviving spouse, it is evident from the language of the constitutional amendment itself that the protection of the family is still the underlying reason for the homestead provision. If the existence of a family relationship were no longer a concern of homestead, then the owner of homestead would be free to devise his property as he desires. However, under the present homestead provision, the owner is still prohibited from devising his homestead property if he is survived by a spouse or minor child.
The inclusion of the words "a natural person" does not eliminate the element of family protection; but, rather, recognizes that in today's times there are persons *695 who, although not included in the traditional "head of household" definition, still have a need to protect their families. As Representative Hawkins, who sponsored the amendment in the House of Representatives, explained, the purpose of the revision was "to give protection against forced sale for the homestead of a single person, a divorced person, any person who has a homestead, rather than just a head of a family."[4] House Judiciary Full Committee Meeting, March 29, 1983. Therefore, the amendment to the homestead provision did not eliminate the underlying basis of family protection; but rather, it expanded those persons who can now take advantage of the homestead provision and its protections. See Taylor v. Gessler Clinic, P.A., 516 So.2d 322 (Fla. 2d DCA 1987).
As the amendment merely expanded the class of persons who may now enjoy the protections of the homestead provision, I see no reason why the concept of abandonment should not survive the revision. Under the new definition of homestead, just as in Barlow, a person should not be entitled to homestead rights merely because he or she enjoys the status of a spouse. When a spouse vacates the home with no intent of returning, any claim to the homestead has been abandoned, and the owner should be free to devise his property as he desires. There is no language in the constitutional or statutory homestead scheme which would mandate the contrary.
Furthermore, it is well established that a person is only entitled to claim one homestead. However, the practical effect of the majority's opinion is to allow a spouse who has abandoned one homestead and established another to have claim to two homesteads. Clearly, this was not the legislative intent when it revised the homestead provision.
In the instant case, the trial court found that the appellee Jettie Boyd did abandon her claim to the decedent's homestead. Although the majority alludes to the contrary, there was evidence to support the trial court's finding. Appellee moved out of the decedent's home in December of 1985 and she moved back into her own home. She did not return to the decedent's home prior to his death on August 22, 1986. During their separation, neither the decedent nor the appellee provided support for the other. Divorce had not been filed for prior to the decedent's death.
As the trial court's finding of abandonment was supported by the evidence presented, I would affirm that finding and reverse the initial determination that appellee was entitled to the decedent's homestead property in fee simple absolute.
NOTES
[1] This case is somewhat confusing procedurally. The trial court originally upheld appellee's homestead claim. We relinquished jurisdiction for the trial court to resolve the abandonment issue and the trial court concluded that appellee had "abandoned" her homestead claim. We are affirming the original order awarding the property to appellee.
[2] In addition to the elimination of this requirement in the 1985 amendment to Article X, the legislature eliminated section 222.19(1) of the statutes which had declared that the legislative intent in providing homestead exemptions was to shelter the family and the surviving spouse.
[3] We note that the only evidence as to the circumstances of the parties' separation here is the appellee's testimony which indicates she left the home because of the deceased's conduct.
[4] Although this explanation is directed to the exemption of homestead from forced sale, it is also applicable to the restriction of devising homestead, as the definitions of homestead in both sections were changed from "head of household" to "a natural person."