543 So.2d 219 (1989)
In re ESTATE OF John A. SCHOLTZ, Deceased.
No. 72674.
Supreme Court of Florida.
May 4, 1989.
Richard A. Bolton of Richard A. Bolton, P.A., North Miami, for petitioner.
Gerald K. Burton of Thompson and Burton, P.A., Hollywood, for respondent.
GRIMES, Justice.
We review In re Estate of Scholtz, 525 So.2d 516 (Fla. 4th DCA 1988), in which the district court of appeal certified a question to be of great public importance. Our jurisdiction is predicated upon article V, section 3(b)(4), of the Florida Constitution.
John and Alice Scholtz were married in 1928. In 1956 they separated and have lived apart ever since. During their separation, John bought a piece of residential property which was titled solely in his name. He lived there until he moved to a nursing home shortly before his death. John left surviving his wife and one daughter. The trial court determined that the residential property was John's homestead. Relying upon its prior decision of In re Estate of Boyd, 519 So.2d 692 (Fla. 4th DCA), review dismissed, 525 So.2d 876 (Fla. 1988), the district court of appeal affirmed and certified the following question to this Court:
IS THE CONCEPT OF ABANDONMENT AS SET OUT IN BARLOW V. BARLOW STILL VIABLE IN VIEW OF THE 1985 AMENDMENT OF THE HOMESTEAD PROVISIONS OF THE FLORIDA CONSTITUTION?
525 So.2d at 517.
Article X, section 4, of the Florida Constitution, dealing with homestead, reads as follows:
SECTION 4. Homestead; exemptions. 
(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a *220 lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:

(1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or his family;
(2) personal property to the value of one thousand dollars.
(b) These exemptions shall inure to the surviving spouse or heirs of the owner.
(c) The homestead shall not be subject to devise if the owner is survived by spouse or minor child, except the homestead may be devised to the owner's spouse if there be no minor child. The owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage, sale or gift and, if married, may by deed transfer the title to an estate by the entirety with the spouse. If the owner or spouse is incompetent, the method of alienation or encumbrance shall be as provided by law.
(Emphasis added.) Before the 1985 amendment referred to in the certified question, the words "a natural person," which are italicized above, read "the head of a family."
Prior to the 1985 amendment, Florida courts had held that under certain circumstances the surviving spouse would be deemed to have abandoned the homestead, thereby permitting the owner to devise the property despite the constitutional proscription. Thus, in Barlow v. Barlow, 156 Fla. 458, 23 So.2d 723 (1945), the wife left the home that was owned by her husband while his death was imminent. At the time she left, she told others that she had no intention of returning. After leaving she engaged counsel to procure a divorce. This Court held that the wife had abandoned the homestead and could not make a claim against it after her husband had died. The question before us is whether the concept of abandonment has survived the elimination of the head of the family language in article X, section 4.
In Public Health Trust v. Lopez, 531 So.2d 946 (Fla. 1988), this Court addressed the effect of the 1985 amendment on the exemption of the homestead from forced sale provided in article X, section 4(a). The creditors argued that under case law prior to the amendment, the homestead exemption was not available to the adult heirs of a decedent unless the heirs were dependent upon the decedent. The creditors contended that a literal interpretation of the constitution would provide a windfall for financially independent heirs at the expense of the decedent's creditors, thereby distorting the historical purpose of the homestead laws to protect dependents in need of shelter. This Court ruled against the creditors, finding that the constitutional provision at issue was clear, reasonable, and logical in its operation. The Court said that it was fortified in its conclusion by the legislative history of the amendment. Finally, we concluded that homestead property always descended free of the claims of creditors without regard to whether the heirs were dependents. The Court pointed out that the cases relied upon by the creditors were ones in which it had been decided that the owner was not the head of the family at the time of his death.
Unlike the situation in Lopez, there is no legislative history surrounding the amendment to illustrate what its proponents had in mind with respect to the devise of homesteads. However, it is significant that effective upon the adoption of the 1985 amendment, the legislature repealed section 222.19(1), Florida Statutes (1983), which had provided that it was the declared intention of the legislature that the purpose of the constitutional exemption of the homestead was to shelter the family and the surviving spouse. At the same time, section 732.401, Florida Statutes (1985), *221 which provides the means by which homesteads shall descend, remained unchanged.
Notwithstanding, the petitioner, who is the decedent's nephew, argues that the rationale for the prohibition against the devise of homestead property is for the protection of the surviving family and that when the family no longer resides together in the household, the reason for the prohibition no longer exists. Thus, petitioner argues that the concept of abandonment remains applicable despite the 1985 amendment. In response to such a contention, the district court of appeal in In re Estate of Boyd stated:
It appears that the abandonment concept set out in Barlow and other cases was inextricably tied to the "head of household" requirement of the prior constitutional homestead scheme. The abandonment concept appears to be predicated on two possible bases. The first is that a homeowner whose spouse abandons him and sets up her own residence elsewhere with no intent of returning cannot be a "head of household" because there is no longer a family residing with him in the home. In that case, the property loses its homestead status by definition and the surviving spouse has no claim simply because there is no homestead. A second possible basis for Barlow's holding is the court's concern that it would be inequitable to allow a spouse who has "abandoned" the homestead to come back and claim it when her spouse dies. This equitable concern would also appear to be tied to the family unit definition of homestead. Even if it is not, however, we do not believe the courts have the authority to act upon such concerns no matter what the equities may be, in view of the clear and unequivocal language to the contrary in the constitutional and statutory homestead scheme.
519 So.2d at 692 (footnotes omitted).
We are compelled to agree with the district court of appeal. The concepts of abandonment and inequity that were part of the cases predating the 1985 amendment all related to the definition of homestead which contemplated a "head of the family." The constitution no longer contains these words and refers only to ownership of the property by a natural person.
Article X, section 4, must be read in its entirety. This Court has previously rejected the argument that the term homestead should be given a different definition under subparagraph (c) than that under subparagraphs (a) and (b). Holden v. Estate of Gardner, 420 So.2d 1082 (Fla. 1982). While we may have some doubt about whether the proponents of the amendment considered its effect as related to the prohibition against the devise of homesteads, we are unable to state with any certainty that they did not intend the surviving spouse and the children to receive the homestead regardless of whether the family unit continued to exist at the time of the owner's death. In any event, the language of article X, section 4, is clear and unambiguous. The homestead may not be devised if the owner is survived by a spouse or minor child. Because John Scholtz died leaving a spouse, the descent of his property is controlled by section 732.401(1), Florida Statutes (1987).
We approve the decision of the district court of appeal.
It is so ordered.
SHAW, BARKETT and KOGAN, JJ., concur.
McDONALD, J., concurs specially with an opinion.
EHRLICH, C.J., dissents with an opinion, in which OVERTON, J., concurs.
McDONALD, Justice, concurring specially.
I prefer the conclusion that one must be the head of a household to preclude a devise of real property. The purpose of this prohibition is to protect the family. If, indeed, a person's family is in name only and the owner is living apart from his spouse or children without an obligation to support, no policy reason remains to thwart a bequest of the property to someone other than the wife or adult child. The policy reasons for allowing the homestead protection *222 of taxation and forced sale to any natural person is different. In spite of my personal belief, I believe the law has reached the point where the conclusion of the majority opinion is correct. Hence, though I am sympathetic to the view expressed by Justice Ehrlich, I concur with the majority.
EHRLICH, Chief Justice, dissenting.
I am of the opinion that the concept of abandonment survived the elimination of the "head of household" language in article X, section 4, of the Florida Constitution.
Historically, the purpose of the homestead provision was to protect the family. See generally Barlow v. Barlow, 156 Fla. 458, 23 So.2d 723 (1945). I agree with the dissent of Judge Walden in In re Estate of Boyd, 519 So.2d 692, 693 (Fla. 4th DCA) (Walden, J., concurring in part, dissenting in part), review dismissed, 525 So.2d 879 (Fla. 1988), and with the dissent of Judge Stone below, In re Estate of Scholtz, 525 So.2d 516, 517 (Fla. 4th DCA 1988) (Stone, J., concurring in part, dissenting in part). It is clear from the constitutional provisions prohibiting devise of homestead property if the owner is survived by a spouse or minor child, that the concern for protection of the family still underlies the homestead provision. Without that concern there would be no compelling reason to restrict the ability to devise in this manner. The amendment substituting "a natural person" for "a head of household" did not eliminate the underlying concern for family protection from the homestead provision. Rather, the amendment effectively broadened the category of families protected by the homestead provision to include those not covered by the traditional definition of "head of household." For example, prior to the 1985 amendment, where a husband and wife lived together on property owned solely by the wife, and the husband was found to be the head of the household, the property would not be homestead, i.e., not owned by the "head of household," and could be devised by the wife without restriction. Holden v. Estate of Gardner, 420 So.2d 1082 (Fla. 1982). That type of family was not protected by the homestead provision. After the 1985 amendment, however, the property need only be owned by "a natural person" to be homestead; the property in the above example would qualify and could not have been devised by the wife because she is survived by a spouse.
Where there has been an abandonment and the surviving spouse has severed all family ties, no real family remains to be protected. It is therefore inconsistent with the purpose of the homestead provision to restrict devise of the property where there has been an abandonment.
Further, as Judge Walden noted in In re Estate of Boyd, "the practical effect of the majority's opinion is to allow a spouse who has abandoned one homestead and established another to have claim to two homesteads." 519 So.2d at 695. Surely, this was not an intended consequence of the 1985 revision to article X, section 4.
The trial judge in this case did not make any findings as to abandonment of the homestead by Alice Scholtz, apparently believing that it was no longer a viable concern after the amendment to the homestead provision. I would answer the certified question in the affirmative, quash the opinion below, and remand to the trial court for a determination of whether there was an abandonment in this case.
OVERTON, J., concurs.