LAGOA, J.
Appellants, Grisel Beltran (“Grisel”) and her father, Evaristo Beltran (“Evaristo”), appeal the trial court’s order denying their motion to set aside/vacate the sale of property to the appellee, Sunset Home Partners, Inc. (“Sunset Home”). Because the property was exempt from forced sale for the payment of creditor’s claims pursuant to Florida’s homestead law, Art. X, § 4(a), Fla. Const., we hold that the trial court erred in denying the motion to set aside/vacate the sale. Accordingly, we reverse and remand with directions to vacate the sale.
I. FACTUAL AND PROCEDURAL HISTORY
The parties were previously before this Court in Beltran v. Kalb, 982 So.2d 24 (Fla. 3d DCA 2008). As set forth in that opinion, in January of 1990, the marriage of Evaristo and Carmen Beltran (“Carmen”) [1] was dissolved by final judgment of *785 dissolution of marriage. The final judgment of dissolution incorporated by reference the marital settlement agreement entered into between Carmen and Evaristo, and the final judgment was recorded in the public records.
During their marriage, Carmen and Evaristo owned a home located at 3091 N.W. 97 Street (the “property”), which all parties agree was their homestead. Pursuant to the terms of the marital settlement agreement, Carmen retained “sole and exclusive occupancy” of the property. Additionally, the marital settlement agreement required Evaristo to deliver a quit claim deed to Carmen conveying his interest in the property to her. Evaristo did not execute the quit claim deed at the time of the dissolution, despite the requirement of the marital settlement agreement. Carmen, however, complied with the terms of the marital settlement agreement, paid all taxes and insurance on the home, and in fact paid off the mortgage.
In May 1990, subsequent to the parties’ dissolution of marriage, Tops All Roofing and Building Products, Inc., obtained a final judgment for $10,502.83 against Evar-isto to recover for a debt owed by Evaris-to’s roofing company. The judgment was recorded in June 1990 and re-recorded in January 2007.
In February 2007, Carmen passed away, and Evaristo quit-claimed his interest in the property to Grisel in April 2007. In March 2007, a sheriffs levy was recorded on the property, and in May 2007, Sunset Home purchased Evaristo’s interest in the property at a sheriffs sale for $36,000.
Evaristo filed a motion to set aside/vacate the sale, which the trial court denied. In Beltran, 982 So.2d at 26, this Court reversed the trial court’s denial, and found that Evaristo and Grisel had been denied due process, in part because “Evaristo Beltran was not given notice of the sale or of the proceedings against the house.” We remanded the cause for an evidentiary hearing specifically to give Evaristo and Grisel “a reasonable opportunity to be heard on the homestead and other defenses.” Id.
On remand, the trial court again denied the motion to set aside/vacate the sale finding that Grisel had “failed to carry her burden of proof by offering testimony to demonstrate the decedent (Carmen Bel-tran) was the head of a household for homestead exemption.” The trial court made no other findings in support of its denial. This appeal ensued.
II. ANALYSIS
We review the denial of a motion to set aside/vacate a sale for abuse of discretion. See Long Beach Mortg. Corp. v. Bebble, 985 So.2d 611 (Fla. 4th DCA 2008), review denied, 996 So.2d 211 (Fla.2008); Gulf State Bank v. Blue Skies, Inc., of Ga., 639 So.2d 161 (Fla. 1st DCA 1994). However, review of whether the trial court applied “the correct legal rule is de novo, because application of an incorrect rule is erroneous as a matter of law.” Vaughn v. State, 711 So.2d 64, 66 (Fla. 1st DCA 1998).
1. Carmen’s interest in the property
Prior to 1985, the homestead protection from forced sale benefitted only owners who were the “head of a family.” See art. X, § 4, Fla. Const. (1983). Under that standard, actual “family” occupancy of the property and the intention to remain there and make it the home of the family were essential to the homestead right. See Edward Leasing Corp. v. Uhlig, 652 F.Supp. 1409, 1412 (S.D.Fla.1987). A family relationship was met by “(1) a legal duty to maintain arising out of the family relationship and/or (2) a continuing com *786 munal living by at least two individuals under such circumstances that one is regarded as the person in charge.” Holden v. Estate of Gardner, 404 So.2d 1169, 1172 (Fla. 1st DCA 1981), approved, 420 So.2d 1082 (Fla.1982).
In 1984, the Florida Constitution was amended and the phrase “head of a family” was changed to “a natural person.” Thus, article X, section 4(a), now reads in pertinent part: “There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon ... the following property owned by a natural person: (1) a homestead .... ” (emphasis added). The class of persons who could take advantage of the homestead protection was thereby expanded. See Pub. Health Trust v. Lopez, 531 So.2d 946, 948 (Fla.1988). As such, the trial court's finding that it was necessary to prove that Carmen was the head of a household in order to prove homestead was erroneous.
At the hearing on the motion to set aside/vacate sale, the trial court asked Evaristo questions clearly indicating that the trial court was concerned with determining who supported Carmen while she lived in the home, and whether Carmen and Grisel lived there together, as a “family unit.” Neither factor is relevant in determining whether the home was Carmen’s homestead. Rather, it must be shown that a natural person, in this case Carmen, intended to make the property her homestead and actually maintained the property as her principal residence. See In re Alexander, 346 B.R. 546, 548 (Bankr.M.D.Fla.2006); In re Lee, 223 B.R. 594, 598 (Bankr.M.D.Fla.1998) (“Homestead status is established by the actual intention to live permanently in a place coupled with actual use and occupancy.”). Here, Evaristo testified that Carmen continued to live at the property after he left. As proof of homestead, Evaristo and Grisel presented the Petition' to Determine Homestead status that they had filed in probate court, which had as an attachment proof of the property’s homestead tax exemption.[2] The fact that property is homestead for ad valorem tax exemption is evidence as to the issue of a claimant’s intent that the property is also homestead. See Pierrepont v. Humphreys (In re Estate of Newman), 413 So.2d 140 (Fla. 5th DCA 1982); In re McClain, 281 B.R. 769 (Bankr.M.D.Fla.2002).
Additionally, Sunset Home did not dispute that Carmen lived in the home continuously from the time of the dissolution, that Carmen made the mortgage, insurance, and tax payments on the home from the time of the dissolution, and that the home was Carmen’s address at the time of her death. Sunset Home’s only argument—advanced by counsel without evidence—was that Carmen may also have had a tenant at the property. Even if true, this would not affect homestead status. Because the trial court failed to apply the correct standard in determining that Carmen’s interest in the property was not her homestead, we reverse the trial court’s denial. Moreover, given these uncontro-verted facts, we conclude that the evidence presented below was sufficient to establish that Carmen’s interest in the property constituted her homestead.
2. Evaristo’s interest in the property
We also find that the trial court erred in failing to determine the nature of Evaristo’s interest in the property. Because the final judgment did not operate as a transfer of Evaristo’s interest in the home to Carmen, and Evaristo never quit- *787 claimed his interest in the property to Carmen, the parties continued to own the home as tenants in common. See Johnson v. Johnson, 902 So.2d 241 (Fla. 1st DCA 2005); Margolis v. Margolis, 843 So.2d 938 (Fla. 3d DCA 1977). If Evaristo’s interest in the property maintained its homestead status after the dissolution of marriage, no lien could be enforceable against the property. See Nationwide Fin. Corp. v. Thompson, 400 So.2d 559, 561 (Fla. 1st DCA 1981) (“The material time for determining the priority of a lien over a claim of homestead exemption is the time the lien would have attached if homestead exemption were not applicable.”).
As article X, section 4(a)(1) provides, the homestead exemption is “limited to the residence of the owner or the owner’s family.” (emphasis added). Accordingly, “the Florida Constitution does not require that the owner claiming homestead exemption reside on the property; it is sufficient that the owner’s family reside on the property.” Nationwide, 400 So.2d at 561. The fact that exclusive use and possession of the marital residence is awarded to the wife in a dissolution action does not extinguish the husband’s homestead. Coy v. Mango Bay Prop. & Invs., Inc., 963 So.2d 873, 878 (Fla. 4th DCA 2007); Cain v. Cain, 549 So.2d 1161, 1163 (Fla. 4th DCA 1989). Homestead status continues until the homestead is abandoned or alienated in the manner provided by law. Cain, 549 So.2d at 1163. In order to show abandonment, “it must be shown that both the owner and the owner’s family abandoned the property.” Nationwide, 400 So.2d at 561; see also In re Harrison, 236 B.R. 788, 789-90 (Bankr.M.D.Fla.1999); Cain, 549 So.2d at 1163.
The record shows that Evaristo left the house pursuant to the terms of the final judgment of dissolution awarding possession of the property to Carmen. It is undisputed that after the divorce Carmen and Grisel continued to live on the property. Moreover, Evaristo supported his daughter financially. There was no showing below that Evaristo and his family abandoned the property. Because Evaris-to’s interest in the property maintained its homestead character at all times and was not abandoned, Tops All Roofing’s judgment could not be enforceable against his interest.
Accordingly, because the evidence below established that both Carmen and Evaristo each held a homestead interest in the property, we reverse the order and remand with directions to vacate the sale.
Reversed and remanded.

. Carmen is Grisel's mother.

. The trial court declined to accept into evidence the petition with attachments.