NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

NORA FRISCIA, as Personal )
Representative of the Estate of )
Vincent J. Friscia, Deceased, )
                            )
          Appellant, )
                            )
v. )          Case No. 2D13-412
                            )
THOMAS FRISCIA and NICHOLAS )
FRISCIA, )
                            )
          Appellees. )
                            )
_____ )

Opinion filed August 27, 2014.

Appeal from the Circuit Court for
Charlotte County; Christine Greider,
Judge.

Pamela D. Keller of Keller Law Office,
P.A., Punta Gorda, for Appellant.

Glenn N. Siegel of Glenn N. Siegel,
P.A., Port Charlotte, for Appellees.

SILBERMAN, Judge.

        Nora Friscia, as personal representative of the Estate of Vincent J. Friscia

(the Decedent), seeks review of an order which determines that the Decedent's interest

in his former marital home is entitled to the homestead exemption under article X,

section 4 of the Florida Constitution.  At the time of his death, the Decedent was divorced from his first wife, Robin Friscia (the Former Wife), and married to Nora Friscia (the Second Wife).  The Former Wife was living in the former marital home with the two children of the marriage pursuant to a provision in a marital settlement agreement (MSA) awarding the Former Wife exclusive use and possession until the youngest child, Nicholas, graduated from high school.  The probate court determined that the Decedent owned the home as a tenant in common and his interest retained its homestead status. We affirm but write to clarify that this homestead status is subject to other provisions in the MSA.

I.  Background:  The Applicable Homestead Exemptions

Preliminarily, a brief explanation of the constitutional homestead rights at issue is necessary.  Article X, section 4 of the Florida Constitution provides, in pertinent part, as follows:

> §4.  Homestead; exemptions
>
> (a)  There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, . . . the following property owned by a natural person:
>
> (1)  a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon . . . ; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or the owner's family;
>
> . . . .
>
> (b)  These exemptions shall inure to the surviving spouse or heirs of the owner.

A homestead that qualifies for these exemptions is not a part of the decedent's estate and therefore the personal representative does not have jurisdiction over it or title to it.  McKean v. Warburton, 919 So. 2d 341, 346 (Fla. 2005).  If the homestead is not devised, as in this case, it descends the same way as other intestate property except in cases in which the decedent is survived by a spouse and at least one descendant.  § 732.401(1), Fla. Stat. (2010).  In those cases, the surviving spouse takes a life estate with a vested remainder to the lineal descendants.  Id.

As relates to this case, the operative time frame for determining homestead status is the time of the owner's death because a property's character as homestead dies with the decedent.  Rohan Kelley, "Homestead Made Easy," 65 Fla. B. J. 17, 18 (Mar. 1991); see also Wilson v. Fla. Nat'l Bank & Trust Co. at Miami, 64 So. 2d 309, 313 (Fla. 1953).  "Although the property is no longer 'homestead,' the exemption from forced sale 'bonds' to the title and transfers to the heir or devisee, if the constitutional conditions are met."  Kelley, supra, at 18.  In the event the property is voluntarily sold, this exemption extends to the proceeds from the sale of the homestead if the seller intends to reinvest the funds in a new homestead in a reasonable amount of time.  McKean, 919 So. 2d at 344 n.3.

II.  Facts

The Decedent and the Former Wife were divorced in 2008.  The final judgment of dissolution incorporates the MSA by reference.  Paragraph six of the MSA provides for the disposition of the marital home as follows:

> 6.  DIVISION OF REAL PROPERTY BETWEEN THE PARTIES.

A. REAL PROPERTY. The parties agree that the Wife shall have exclusive use and possession of the marital home located at 1418 Monte Street in Port Charlotte, Florida until such time as the parties' youngest child graduates from high school. At that point in time, the marital home shall be listed for sale at fair market value and the proceeds after payment of mortgage expenses shall be divided equally (50/50) between the parties. The Wife shall have the option to buy out the Husband's interest in the home at any time until it is sold at one-half (1/2) of fair market value. Said provision shall not delay the listing of the home for sale.

The Decedent died on April 3, 2011. At the time of his death, Nicholas was still attending high school and the children were living in the marital home with the Former Wife.

The petition to determine homestead status was filed in the probate court by the oldest child of the marriage, Thomas. According to the petition, the assets of the Decedent's estate were insufficient to satisfy its debts, taxes, claims, and expenses of administration. Thomas asserted that the former marital home qualified as a homestead within the meaning of article X, section 4 at the time of the Decedent's death. Thomas also asserted that, because the property was a protected homestead, title to the Decedent's interest in the property descended and the constitutional protection from claims of the Decedent's creditors inured to the Decedent's heirs and surviving spouse: Thomas, Nicholas, and the Second Wife.

The Personal Representative objected to the petition and argued that the Decedent waived his homestead rights by agreeing to the following provisions in the MSA: (1) two "mutual release" provisions in which the parties release each other from all claims or demands, and (2) the provision requiring that the marital home be sold and the net proceeds divided when Nicholas graduated from high school. She asserted that

- 4 -

if the former marital home was afforded homestead protection then the Estate could not force the sale of the property and the Estate would be denied the benefits the Decedent bargained for in the MSA.

The probate court rejected the waiver argument and concluded that the Decedent owned the home as a tenant in common and that his one-half interest was entitled to homestead protection under the Third District's decision in Beltran v. Kalb, 63 So. 3d 783 (Fla. 3d DCA 2011). The court ruled that the Decedent's interest descended and the homestead exemption from claims of his creditors inured to the Second Wife as a life estate with a vested remainder in Nicholas and Thomas as lineal descendants. The court ordered the Personal Representative to surrender possession and control of the Decedent's interest in the property to the Second Wife. As a result of this ruling, the Former Wife and the Second Wife each owned a one-half interest in the former marital home as tenants in common with the Second Wife having a life estate.

The Personal Representative filed an amended motion for rehearing and an alternative motion to enforce the court's order. In the amended motion for rehearing, the Personal Representative asserted that the probate court's order gives rights to the Former Wife, Nicholas, and Thomas that neither the Former Wife nor the Decedent would have had if the Decedent had survived. If the Decedent had survived, he and the Former Wife would have been required by the MSA to sell the marital home when Nicholas graduated from high school. There is no provision that would have allowed the Decedent to remain in the marital home, and the Former Wife could have remained therein only by paying the Decedent the value of his interest.

In the alternative motion to enforce, the Personal Representative explained that, after the order was rendered, the Second Wife went to the former marital home "to exercise her right in the life estate" and Thomas refused entry. When the Second Wife persisted with her attempts to gain entry, Thomas called the police and they escorted the Second Wife from the property. The Personal Representative asserted that Thomas's actions were inconsistent with the Second Wife's rights as established in the probate court's order. The Personal Representative argued that, as a life tenant, the Second Wife has an unrestricted right of access to the property.

The probate court found that "[t]he Personal Representative's argument as to the untenable consequences associated with the implementation of this Court's Order is well taken." However, the court was not persuaded to change its ruling that the former marital home was entitled to the homestead exemption. The court denied rehearing and reaffirmed that its prior order "shall remain in full force and effect." The court did not separately address the alternative motion to enforce.

III.  Analysis

On appeal, the Personal Representative argues that the probate court erred in determining that the Decedent's interest in the former marital home is entitled to the homestead exemption. The Personal Representative argues that the probate court was required to enforce the MSA and that the court's reliance on Beltran was erroneous because that case did not involve MSA waiver issues. The Personal Representative does not raise any appellate issues pertaining to her postjudgment motion to enforce the probate court's order.

We agree with the probate court that the former marital home is entitled to the homestead exemption under Beltran. We also agree with the probate court's ruling that the terms of the MSA do not waive the Decedent's right to the constitutional protection from claims of his creditors. Thus, we affirm the orders on appeal. However, we acknowledge the validity of the Personal Representative's concerns regarding enforcement of the MSA's provision requiring the sale of the former marital home and write to clarify that the homestead status of the Decedent's interest is otherwise subject to this provision.

A. Beltran v. Kalb

In Beltran, a husband and wife entered into a marital settlement agreement that provided the wife with exclusive use and possession of the marital home and required the husband to convey his interest in the property to the wife via quitclaim deed. 63 So. 3d at 785. However, the wife died before the husband executed the deed. When the property was sold at a sheriff's sale, the husband unsuccessfully argued that the sale should be set aside because the property was exempt from forced sale under the homestead exemption. Id. at 785-86.

On appeal, the Third District observed that the final judgment did not operate as a transfer of the husband's interest and the husband had not executed the quitclaim deed. Id. at 786-87. Thus, the husband and wife owned the marital home as tenants in common at the time of the wife's death, and it would be necessary to determine the homestead status of each owner. Id. at 787. In evaluating the nature of the husband's interest, the court rejected the notion that the award of exclusive use and possession to the wife extinguished the husband's entitlement to homestead protection.

The court explained that the husband's interest in the marital home had retained its homestead status because his daughter, whom he continued to support financially, still resided on the property. The court concluded that, because each of the tenants in common retained their homestead interest in the marital home, the homestead exemption precluded the forced sale of the property to satisfy a creditor's lien. Id.

In this case, as in Beltran, the final judgment of dissolution did not operate to transfer the Decedent's interest and the former marital home had not been deeded when the Decedent died. Thus, the Decedent and the Former Wife still owned the former marital home as tenants in common at the time of his death. See Beltran, 63 So. 3d at 786-87. And the fact that the Former Wife had been awarded exclusive use and possession of the marital home did not in itself extinguish its homestead protection. See id. at 787. The Decedent's interest retained its homestead protection because the Decedent's sons, whom he still supported financially, continued to live on the property. See id.; see also Nationwide Fin. Corp. of Colo. v. Thompson, 400 So. 2d 559, 561 (Fla. 1st DCA 1981) ("[T]he Florida Constitution does not require that the owner claiming homestead exemption reside on the property; it is sufficient that the owner's family reside on the property.").

Thus, the probate court properly relied on Beltran to determine that the Decedent owned the home as a tenant in common and his interest retained its homestead status. And, because the Decedent died intestate and was survived by a spouse and lineal descendants, the probate court properly determined that the Decedent's protected homestead interest descended to the Second Wife as a life estate with a vested remainder in Nicholas and Thomas. See § 732.401(1). The probate court

also properly ordered the Personal Representative to surrender possession and control of the Decedent's interest in the property to the Second Wife.  See McKean, 919 So. 2d at 346.

### B.  Waiver in the MSA

Our analysis does not end here because this case contains additional factors that Beltran lacked:  the MSA contains (1) two "mutual release" provisions in which the parties release each other from all claims or demands and (2) the provision that requires the marital home to be sold and the net proceeds divided when Nicholas graduated from high school.  The Personal Representative argues that, by agreeing to these provisions, the Decedent waived his homestead rights in his interest in the former marital home.

### 1.  Mutual Release Provisions

The Florida legislature has provided that a spouse may waive his or her homestead rights wholly or partly in a contract signed in the presence of two subscribing witnesses.  See § 732.702(1).  Furthermore, language waiving "all rights" or equivalent waiver language in such a contract will be construed as a waiver of all homestead rights "in the property of the other."  Id.

The applicable provisions of the MSA, which was signed in the presence of two subscribing witnesses, provide:

> 8.  MUTUAL RELEASE.  Except as otherwise provided in this Agreement, and excepting any possible cause of action for dissolution of marriage, each party releases the other from all claims or demands up to the date of execution of this Agreement.

Except as otherwise provided herein each party waives, releases and relinquishes all right that he or she may have or may hereafter acquire as the other party's spouse under the present or future laws of any jurisdiction:

A. To inherit under laws of intestacy or under will or codicil of the other party now or hereafter in force;

B. To elect dower, curtesy or any elective share against any will or codicil of the other party now or hereafter in force;

C. To share in the other party's estate;

D. To act as personal representative of the other party's estate.

9. MUTUAL RELEASES OF ACTIONS. Each party remises, releases, and forever discharges the other <u>from all causes of action, claims, rights, or demands, in law or in equity</u>, which either of the parties ever had, or now has, against the other, except for the dissolution of marriage action to be filed subsequent to the execution of this Agreement.

(Emphasis added.) This language is the type of "all rights" language that provides for a waiver of homestead under section 732.702(1).

However, the parties' release of each other "from all claims or demands up to the date of execution of this Agreement" and "from all causes of action, claims, rights, or demands, in law or in equity" is a waiver of all homestead rights "<u>in the property of the other</u>." <u>See</u> § 732.702(1) (emphasis added). The rights at issue in this case are the Decedent's homestead rights in his own property, not in the property of the Former Wife. Thus, these waiver provisions are inapplicable. <u>Cf.</u> <u>City Nat'l Bank of Fla. v. Tescher</u>, 578 So. 2d 701, 703 (Fla. 1991) (holding that a waiver provision in a prenuptial agreement constituted a waiver of the husband's homestead rights in the wife's homestead).

2. <u>Provision Providing for Disposition of the Marital Home</u>

A spouse can waive his homestead rights in his own property by contracting to take action inconsistent with those rights. See Kerzner v. Kerzner, 77 So. 3d 214, 216-17 (Fla. 3d DCA 2011); Myers v. Lehrer, 671 So. 2d 864, 866-67 (Fla. 4th DCA 1996). Indeed, once an MSA containing such provisions is incorporated into a final judgment, it is analogous to the written homestead waivers enforced under section 732.702(1). Myers, 671 So. 2d at 866-67. Thus, for example, if a husband agrees to sell the marital home and satisfy any outstanding judgments against him with his share of the proceeds, he has waived the homestead protection shielding his proceeds from his creditors. See id.

However, the Decedent's agreement to sell the marital home was not necessarily inconsistent with the homestead right protecting his interest in the home from forced sale. See In re Ballato, 318 B.R. 205, 209 (Bankr. M.D. Fla. 2004) (holding that a provision of a final judgment of dissolution providing for the sale of the marital home and the division of the proceeds does not in itself preclude homestead status on one spouse's half interest); Barnett Bank of Cocoa, N.A. v. Osborne, 349 So. 2d 223, 223 (Fla. 4th DCA 1977) ("[W]e determine the trial court correctly ruled that the property was subject to the homestead exemption claimed by the former husband, notwithstanding the former husband and wife having been divorced and the wife entrusted by the decree with custody of the children and possession of the home" until the youngest reaches majority.).

Similarly, the Decedent's agreement to divide the proceeds was not necessarily inconsistent with his homestead right protecting his share of the proceeds from claims of his creditors. See Kerzner, 77 So. 3d at 217 (holding that a husband's

agreement to sell the marital home and pay any "liens or encumbrances" on the home with the proceeds does not constitute a waiver of homestead protection from claims of his creditors because a judgment held by a creditor is not a lien or encumbrance on the homestead property).

Thus, the MSA provision providing for disposition of the marital home did not constitute a waiver of the Decedent's homestead protections from forced sale or the use of any sale proceeds to pay his creditors.

C.  Limitations on the Homestead Status Under the MSA

Our analysis in sections III(A) and (B) explains why we are affirming the probate court's determination that the Decedent's interest in the former marital home is entitled to the homestead exemption under article X, section 4.  But we also write to dispel some confusion about what the probate court called "the untenable consequences associated with the implementation of this Court's order."  Specifically, we write to address the Personal Representative's assertion that the order gives rights to the Former Wife, Nicholas, and Thomas that neither the Former Wife nor the Decedent would have had if the Decedent had survived.  We also address the Personal Representative's assertion that, as a life tenant, she has an unrestricted right of access to the property.

Contrary to these assertions, the homestead status afforded to the Decedent's interest in the marital home does not negate the terms of the MSA.  If the Decedent had lived, the Former Wife would have been entitled to exclusive use and possession of the former marital home.  And the Former Wife and the Decedent would have been required to sell the former marital home and divide the proceeds unless the

Former Wife exercised the option to buy out the Decedent's interest. Because the MSA provides that it is binding on the parties' "respective heirs, next of kin, executors and administrators," Nicholas, Thomas, and the Second Wife are bound by its terms as well. Unfortunately for the Second Wife, the occupancy, sale, and option to buy provisions of the MSA result in her having a life tenancy in the Decedent's interest in name only.

IV. Conclusion

In conclusion, the probate court properly determined that the Decedent owned the former marital home as a tenant in common and his interest retained its homestead status at the time of his death. Because the Decedent died intestate and was survived by a spouse and lineal descendants, the probate court properly determined that the Decedent's protected homestead interest descended to the Second Wife as a life estate with a vested remainder in Nicholas and Thomas. The probate court also properly ordered the Personal Representative to surrender the Decedent's interest in the property to the Second Wife. And the court properly rejected the Personal Representative's argument that the Decedent waived his homestead rights to protection from the claims of his creditors by agreeing to the provisions in the MSA. But the Decedent's heirs remain bound by the MSA and are prohibited from interfering with the Former Wife's right to temporary exclusive use and possession, the Former Wife's option to buy out the Decedent's interest, and the requirement that the marital home be sold if the Former Wife declines to exercise her option.

Affirmed.

LaROSE and MORRIS, JJ., Concur.