DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**SANFORD D. LYONS, TIMOTHY R. LYONS**, and **JOHN C. LYONS**, as
Trustees of the Norma W. Lyons 1993 Qualified Personal Residence
Trust,
Appellants,

v.

**NORMA W. LYONS, VALERIE A. LYONS, WILLIAM M. TUTTLE, II,** and
**DOROTHY A. LYONS HEFFNER,**
Appellees.

Nos. 4D13-1793 and 4D13-4211

[October 29, 2014]

Consolidated appeals from the Circuit Court for the Seventeenth
Judicial Circuit, Broward County; Marina Garcia-Wood, Judge; L.T. Case
No. 11-17399 (18).

Daniel L. Wallach and Allen M. Levine of Becker & Poliakoff, P.A., Fort
Lauderdale, for appellants.

William M. Tuttle, II of William M. Tuttle, II, P.A., Coral Gables, for
appellees Norma W. Lyons, Valerie A. Lyons and William M. Tuttle, II.

LEVINE, J.

The issue presented is whether the trial court erred in finding that a
wife had standing to assert the homestead rights of her deceased husband,
who did not sign a 1993 deed, and declare the quit claim deed to a
residence trust void ab initio. We find that the wife lacked standing to
raise her deceased husband's homestead rights and, as such, we reverse.

Richard and Norma Lyons, a husband and wife, owned a home that
was their primary residence. In 1993, Richard and Norma quit claimed
the residence to Norma alone. The quit claim deed contained language
that Richard "does hereby remise, release and quit-claim unto the said
second party [Norma] forever, all the right, title, interest, claim and
demand which the said first party [Richard] has in and to the [property]."
On the same day, Norma quit claimed the deed to a qualified personal

residence trust ("QPRT"). The irrevocable trust provided for an income term of fifteen years or until the settlor's death, whichever came first. In 2002, Richard executed a will in which he acknowledged the QPRT. Richard passed away in 2007.

The Lyonses had five children, all of whom had reached the age of majority in 1993. In 2010, Norma executed a quit claim deed seeking to convey the residence to herself and daughter Valerie. In July 2011, the sons—Sanford, Timothy and John—as trustees of the trust, filed a complaint against Norma, daughters Valerie and Dorothy, and the attorney, William Tuttle, who prepared the 2010 quit claim deed, seeking to set aside the 2010 deed on the grounds that Norma did not own the residence when she attempted to convey it.

In 2011, Norma, Valerie, and Tuttle moved for summary judgment, arguing that the 1993 deed was void ab initio because it was signed only by Norma, and not signed by Richard, and thus, violated Richard's homestead rights. Norma filed an affidavit at the same time, claiming that it was her intent and Richard's intent to leave the residence exclusively to Valerie. The sons in response argued that Richard waived his homestead rights and that Norma lacked standing to assert her deceased husband's homestead claims.

The trial court entered a summary judgment in favor of Norma, Valerie, and Tuttle, finding that the 1993 deed was void ab initio because Richard, the deceased husband, had not signed the quit claim deed to the trust that Norma had signed. This appeal ensues.

A trial court's entry of summary judgment is reviewed de novo, as is an issue involving interpretation of the Florida constitution. *Karayiannakis v. Nikolits*, 23 So. 3d 844, 845 (Fla. 4th DCA 2009).

In reviewing constitutional provisions, a court must "examine the actual language used in the constitution." *Lewis v. Leon Cnty.*, 73 So. 3d 151, 153 (Fla. 2011). "If that language is clear, unambiguous, and addresses the matter in issue, then it must be enforced as written." *Id.* (citation omitted). "The words of the constitution 'are to be interpreted in their most usual and obvious meaning, unless the text suggests that they have been used in a technical sense.'" *Id.* (citation omitted). Constitutional provisions should be construed in a manner consistent with the intent of the framers and the voters. *Id.*

The Florida constitutional provision limiting the devise and alienation of homestead is governed by article X, section 4(c), which provides:

2

The homestead shall not be subject to devise if the owner is survived by spouse or minor child, except the homestead may be devised to the owner's spouse if there be no minor child. The owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage, sale or gift and, if married, may by deed transfer the title to an estate by the entirety with the spouse. If the owner or spouse is incompetent, the method of alienation or encumbrance shall be as provided by law.

Article X, section 4(c) evidences the constitutional intent to protect a surviving spouse and minor children who otherwise would have no interest in the homestead. "The constitutional provision prohibiting devise of the homestead property if the owner is survived by a spouse or minor child reflects [a] concern for protection of the family." *City Nat'l Bank of Fla. v. Tescher*, 578 So. 2d 701, 703 (Fla. 1991); *see also In re Estate of Boyd*, 519 So. 2d 692, 694 (Fla. 4th DCA 1988) ("The historical purpose of the homestead provision was to protect those legally dependent on the decedent because of a family relationship."). As such, "article X, section 4(c) is designed to protect two classes of persons only: surviving spouses and minor children." *Id.*; *see also In re Estate of Scholtz*, 543 So. 2d 219, 221 (Fla. 1989) ("The homestead may not be devised if the owner is survived by a spouse or minor child.").

The constitutional provision is inapplicable to the present case. In this case neither Norma nor the adult children were members of the class specifically protected by the constitutional provision. The children would obviously not qualify as "minor children." As to Norma, although she is a surviving spouse, she owned the homestead and transferred the homestead to the QPRT. Article X, section 4 (c) does not serve to protect Norma from her own actions in transferring her own homestead property.

The plain language of the constitutional provision describes and limits the actions of the owner of the homestead property. The provision highlights that the "homestead shall not be subject to devise if the owner is survived by spouse or minor child." Further, the provision describes when "the owner of homestead real estate" may alienate the homestead. The entire provision hinges on the conduct of the owner spouse, and the resultant protections to the non-owner surviving spouse or minor children.

Clearly, in the present case, Norma and her husband were owners of the homestead when they quit claimed the homestead to Norma. Norma then became the sole owner of the homestead and quit claimed the

homestead to the QPRT. Norma cannot now claim the quit claim she then executed as sole owner was void ab initio, as she is not the non-owner surviving spouse. At the time of Norma's quit claim to the QPRT, the only non-owner spouse was Richard.

If there were any infirmities in Norma's action of quit claiming the homestead to the QPRT, only Richard as the non-owner spouse could rely on the provisions of article X, section 4(c). Clearly, Norma does not have standing to assert Richard's potential rights had he been the surviving spouse. Norma, as the owner, should not be able to challenge her own acts, as she is not within the class of persons the constitutional provision is designed to protect.

Further, it would be absurd for the party who created the alleged infirmities in the quit claim deed to be able to attack the viability of the same quit claim deed. In other words, Norma should not be able to attack the quit claim deed as void ab initio, where she drafted, relied on, and was the sole signatory to it.

For the foregoing reasons, we reverse the final summary judgment and remand for further proceedings. Because we reverse the summary judgment, we also reverse the order dissolving the lis pendens.

*Reversed and remanded for further proceedings.*

STEVENSON and MAY, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**