# Third District Court of Appeal

## State of Florida

Opinion filed December 14, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-0604
Lower Tribunal No. 16-23706
_____

**Albert Ralph Isaacs, etc.,**
Appellant,

vs.

**Federal National Mortgage Association, etc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Alan Fine, Judge.

Ericka Turk-Moore, P.A., and Ericka Turk-Moore (Pembroke Pines), for appellant.

Troutman Pepper Hamilton Sanders LLP, and Hallie S. Evans (Atlanta, GA); and Shapiro Ramos, P.A., and Cynthia M. Ramos, for appellee.

Before EMAS, MILLER and LOBREE, JJ.

LOBREE, J.

Albert Ralph Isaacs challenges a final judgment of foreclosure and

several preceding orders in a residential foreclosure action brought against him and the estate of his deceased wife, Rachel Isaacs (the "wife"), by Federal National Mortgage Association ("Fannie Mae"). The question for our consideration is whether Isaacs' separation from the wife, departure from the homestead with no intent to return, and establishment of a separate permanent residence prior to the wife's execution of the mortgage operated as a waiver of the spousal joinder requirement under article X, section 4(c) of the Florida Constitution. Bound by our supreme court's decision in In Re Scholtz, 543 So. 2d 219 (Fla. 1989), we answer in the negative and reverse.

The relevant facts are undisputed. Isaacs and the wife were married in 1966 and had two sons. In 1974, they purchased a home (the "property"), taking title as husband and wife. Isaacs occupied the property until he separated from the wife sometime in the 1980s, though he often visited the property thereafter as both sons continued living there. He also continued financially supporting the wife and taking care of the maintenance of the property. In 1999, Isaacs purchased, in his own name, another home (the "new property"), which has been his permanent residence since, and declared homestead tax exception on the new property. Isaacs further executed a quit-claim deed transferring his interest in the property to the wife, which was recorded later that year. In 2005, the wife took out a mortgage

2

against the property in the amount of $89,000. There is a signature on the mortgage purporting to be Isaacs' signature, which he disputes. The wife and the couple's then-adult sons lived at the property until they passed away. The probate court determined that the property was the wife's homestead and descended to Isaacs as the wife's surviving spouse.

Fannie Mae filed a foreclosure action against Isaacs and the wife's estate after the mortgage went into default around the time of the wife's passing in 2016. In his answer, Isaacs raised the forgery of his signature as one of his affirmative defenses. Fannie Mae sought partial summary judgment on this affirmative defense, arguing that Isaacs' joinder in the mortgage under article X, section 4(c) of the Florida Constitution was not required because Isaacs had waived the joinder requirement by abandoning the homestead prior to the mortgage.[1] Isaacs opposed the motion arguing that, following the 1985 constitutional amendment to the homestead scheme, his joinder in the mortgage was required even if he had abandoned the homestead, so long as the property remained the wife's homestead when the mortgage was executed.

---

[1] For purposes of summary judgment, Fannie Mae conceded that Isaacs' signature was forgery.

3

The trial court ultimately agreed with Fannie Mae's contention and granted partial summary judgment on this issue in Fannie Mae's favor. Isaacs moved for reconsideration, and, after his motion was denied, counterclaimed for quiet title, again arguing that the mortgage was not valid because he did not join in it. The case ultimately proceeded to a bench trial in 2020, following which the trial court entered a final judgment of foreclosure in Fannie Mae's favor. This appeal ensued.

Isaacs argues that under the present constitutional homestead scheme, the wife was required to obtain his joinder in the mortgage regardless of whether he had abandoned the homestead, where the property constituted her homestead at the time of the mortgage. Following our de novo review of this issue, see Taylor v. Maness, 941 So. 2d 559, 562 (Fla. 3d DCA 2006), we agree.

Article X, section 4(c) of the Florida Constitution provides in relevant part that "[t]he owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage, sale or gift." Florida courts have consistently interpreted this provision as prohibiting a married homestead owner from alienating the homestead property to a third party without the spouse's consent. See Clemons v. Thornton, 993 So. 2d 1054, 1056 (Fla. 1st DCA 2008) ("Florida's Constitution requires that both spouses

4

join in alienating homestead property in favor of any third party."); Taylor, 941 So. 2d at 563 ("[A]rticle X, section 4(c) . . . specifies that the owner of homestead real estate must, if married, be joined by his or her spouse in order to alienate the homestead by sale."); Crawford v. Fed. Nat'l Mortg. Ass'n, 266 So. 3d 1274, 1277 (Fla. 5th DCA 2019) ("[T]his . . . provision . . . requir[es] spousal joinder in the execution of a mortgage on homestead property in order for the mortgage to encumber the property. . . .").

The Florida Constitution has restricted a married homestead owner's right to alienate the homestead property in a similar fashion since 1885. See Rangel v. Rangel, 325 So. 3d 264, 266 (Fla. 5th DCA 2021) (Nardella, J., specially concurring). Originally, the restraint on alienation applied only to an owner who was the "head of a family," and, conversely, protected only a spouse married to the "head of a family." See generally Donna Litman Seiden, There's No Place Like Home(stead) in Florida - Should it Stay that Way?, 18 Nova L. Rev. 801, 871 (1994). This was so because prior to the 1985 amendment to the Florida Constitution, only property owned by "the head of a family" could qualify as homestead property. See Art. X, § 4(a), Fla. Const. (1984) (defining homestead as "property owned by the head of a family . . . which . . . shall be limited to the residence of the owner or the owner's family"); Nationwide Fin. Corp. of Colo. v. Thompson, 400 So. 2d

559, 560-61 (Fla. 1st DCA 1981) (explaining that to classify as homestead under then existing constitutional homestead scheme, property must be residence of either owner or owner's family and owner must be head of family). Status as the head of a family was established by "a showing of either: (1) a legal duty to support which arises out of a family relationship, or (2) continuing communal living by at least two individuals under such circumstances that one is regarded as in charge." Routman v. Desvarieux, 467 So. 2d 1090, 1091 n.1 (Fla. 3d DCA 1985). Thus, if a married owner was not the head of his or her family, the property did not qualify as homestead and could have been alienated without the spouse's joinder. See Berger v. Lewison, 521 So. 2d 311, 311 (Fla. 3d DCA 1988) (holding that husband's joinder in conveyance of his wife's condominium to third party was unnecessary because condominium in which husband and wife resided did not constitute homestead within meaning of section (4)(a) as wife was not head of family).

Based on the above principles, it appears that under the prior constitutional homestead scheme, a married owner could have avoided the restraint on alienation if his or her spouse's abandonment of the homestead caused the owner to cease to be the "head of a family," and the property thus lost its homestead character. See Miller v. W. Palm Beach Atlantic Nat'l

6

Bank, 142 Fla. 22, 24 (Fla. 1940) (finding that restrictions on alienation of homestead property were removed when husband's abandonment of homestead property deprived property of its homestead status). The same appeared to have been true of the second homestead protection found in section 4(c), the restraint against the devise, providing that "[t]he homestead shall not be subject to devise if the owner is survived by spouse or minor child, except the homestead may be devised to the owner's spouse if there be no minor child." See Barlow v. Barlow, 23 So. 2d 723, 724 (Fla. 1945) (finding that wife could not claim any homestead rights in her husband's estate because she had abandoned homestead property prior to his death).

In 1985, the definition of homestead found in section (4)(a) was revised to include any property owned by a natural person constituting the residence of the owner or the owner's family. See Beltran v. Kalb, 63 So. 3d 783 (Fla. 3d DCA 2011); Art. X, § 4(1), Fla. Const. (1985) (defining homestead as "property owned by a natural person . . . which . . . shall be limited to the residence of the owner or the owner's family"). Since then, the restrictions against alienation and devise found in section (4)(c) apply to any "natural person" owning property that otherwise qualifies as homestead and, conversely, protect any spouse married to a natural person owning a homestead. See generally Litman, supra, at 872; see also Holden v. Est. of

Gardner, 420 So. 2d 1082, 1085 (Fla. 1982) (explaining that section Article X, section 4 must be read in its entirety and definition of homestead for purposes of section (c) is same as found in section (a)).  Thus, under the clear and unambiguous language of section (4), the wife was required to obtain the husband's joinder in the mortgage against the property under section (4)(c) because she was a married owner of property which constituted homestead within the meaning of section (4)(a) at the time of the mortgage.

While it is well established that, in light of the definitional change of homestead, a non-owner spouse's abandonment of the homestead property may not operate as a waiver of the restrictions against the devise, Florida courts have yet to squarely address whether a non-owner spouse's abandonment may constitute a waiver of the spousal joinder requirement with regard to the restraint on alienation.  See In re Estate of Boyd, 519 So. 2d 692, 692 (Fla. 4th DCA 1988) (observing that concept of abandonment that was part of cases predating 1985 amendment related to definition of homestead contemplating head of family and finding that following revision, surviving spouse was entitled to property of her deceased husband regardless of whether she had abandoned the property prior to his death, as property was homestead as defined in section (4)(a) because deceased

husband was natural person who owned and occupied property at time of his death, and no constitutional language conditioned surviving spouse's homestead rights on her residing with deceased homesteader at that time); see also Scholtz, 543 So. 2d at 221 (agreeing with Boyd regarding application of concept of abandonment in pre-1985 cases and holding that decedent's property, which constituted his homestead within meaning of section (4)(a), was subject to restrictions against devise regardless of whether surviving spouse lived at property at time of his death).

We see no reason why Scholtz should not be equally applicable to cases involving the restraint on alienation, as there similarly is nothing in section 4 expressly conditioning the spousal joinder requirement on a non-owner spouse's residing at the homestead property at the time of the conveyance. Any decision to the contrary would not only run afoul of Scholtz but would also allow a married owner-spouse to circumvent its prohibition on a waiver by abandonment of the restraint against the devise. We recognize that some Florida courts have concluded that, where not expressly prohibited by the legislature, the restraint on alienation can be waived if the same mechanism is capable of waiving the restraint against the devise. Compare Rangel, 325 So. 3d at 266 (Nardella, J., specially concurring) (observing that if restraint against devise can be waived by valid premarital agreement under

section 732.702(a), Florida Statutes, there is no reason to prohibit spouse from waiving restraint on alienation by same method, as allowing waiver of restraint on alienation is consistent with allowing restraint on devise this way); with § 732.7025, Fla. Stat. (2018) (providing that "[a] spouse waives his or her rights as a surviving spouse with respect to the devise restrictions under [article X, section 3(a)] if [certain] language is included in a deed," but "[s]uch language may not be considered a waiver of the restrictions against alienation by mortgage, sale, gift, or deed without the joinder of the owner's spouse"), but we are unaware of any decision allowing a waiver of the restraint on alienation where the same method is not capable of waiving the restraint against the devise.[2]

Accordingly, we reverse the final judgment in Fannie Mae's favor and remand for further proceedings consistent with this opinion.

---

[2] Contrary to Fannie Mae's contention, we find Vera v. Wells Fargo Bank, N.A., 178 So. 3d 517 (Fla. 4th DCA 2015), distinguishable, as the issue in that case was whether the subject property was homestead property of a married couple in an intact marriage at the time of the execution of the mortgage.